LOCAL No. 261, INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C. I. O., Appellant, vs. SCHULZE, Respondent.

*March 3—April 8, 1958.*

For the appellant there was a brief by *Charne & Kops* of Milwaukee, and oral argument by *Irvin B. Charne*.

For the respondent there was a brief by *Rheingans, Ketterer & Heidtman* of Milwaukee, and oral argument by *William A. Ketterer*.

CURRIE, J. Unless the "escape" clause in the maintenance-of-membership provisions of the collective-bargaining contract superseded article 6, section 16, of the constitution of the International Union, the plaintiff Union is entitled to prevail in this action. This is because the defendant, upon becoming a member of the plaintiff Union, became bound by all legal provisions of the International Union's constitution

by reason of the membership application blank which she had signed.

Such constitution constitutes a binding contract between the Union and its members. *Herman v. United Automobile, A. & A. I. Workers* (1953), 264 Wis. 562, 567, 59 N. W. (2d) 475; *Government & Civic Employees Organizing Committee, C. I. O. v. Windsor* (1955), 262 Ala. 285, 78 So. (2d) 646; *Mandracio v. Bartenders Union, Local 41* (1953), 41 Cal. (2d) 81, 256 Pac. (2d) 927; *Bires v. Barney* (1954), 203 Or. 107, 277 Pac. (2d) 751; and *Williams v. Masters, Mates & Pilots of America, Local No. 2* (1956), 384 Pa. 413, 120 Atl. (2d) 896. One of the obligations placed upon the defendant by the constitution of the International was that requiring her to pay dues. *Seymour v. Essex County Printing Pressmen* (1941), 19 N. J. Misc. 665, 666, 23 Atl. (2d) 169, 170; and 87 C. J. S., Trade Unions, p. 834, sec. 40.

Under article 6, section 16, of the International's constitution, the notice of withdrawal given by defendant to the plaintiff Union in April, 1955, was insufficient to relieve her from the liability to pay dues for the remainder of the year 1955. Whether such notice of withdrawal so given in April would be sufficient to end her dues-paying liability as of December 31, 1955, without the necessity of giving further notice of withdrawal by registered mail during the ten-day period preceding such date, we find it unnecessary to here determine. The fact, that a further provision in the International's constitution provided for automatic suspension from membership of a member who becomes two months delinquent in paying dues, is insufficient to relieve defendant from her liability for payment of delinquent dues.

We now come to the crucial issue in the case, viz., did the "escape" clause in the maintenance-of-membership provisions of the collective-bargaining contract supersede the stipulated

conditions for withdrawal from membership which are set forth in article 6, section 16, of the International's constitution?

In the case of *Marlin Rockwell Corp.* (1955), 114 NLRB 553, the same International Union before us in the instant case and one of its locals were found guilty of an unfair labor practice in violation of sec. 8 (b) (1) (A) and 8 (b) (2) of the Labor Management Relations Act of 1947, 29 USCA, sec. 158 (the Taft-Hartley Act). Such violation consisted of invoking, or attempting to invoke, the discharge provision of a maintenance-of-membership clause of a collective-bargaining contract against three employees whom the Union claimed owed delinquent union dues. The effective date of such collective-bargaining contract was October 12, 1953. Several weeks before the three employees had tendered their written withdrawals of membership to the union. The union contended such withdrawals from membership were ineffective because they violated the maintenance-of-union-membership clause of the prior collective-bargaining contract then in effect; and that under the International's constitution a notice of withdrawal of membership could only be given between December 21st and December 31st. The majority of the board held that, irrespective of any compulsory union-membership clause in a collective-bargaining contract, a union member is granted by sec. 7 of the Taft-Hartley Act [1] the right to withdraw from membership in the union at any

---

[1] Sec. 7, 61 U. S. Stats. at L., of the Taft-Hartley Act (sec. 157, 29 USCA) reads: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title."

time; but that such employee may still be subject to discharge under the collective-bargaining contract if he fails to pay union dues for the period that the compulsory-membership provision of the contract is to continue in effect. Following this reasoning, the board held that the three employees were not members of the union at the time the new collective-bargaining contract took effect on October 12, 1953, and, therefore, were not union members within the meaning of the maintenance-of-membership clause of such new contract.

However, it is not the holding in chief, but a dictum appearing in the *Marlin Rockwell Corp.* decision, which is of particular interest in the instant appeal. We quote such dictum as follows (114 NLRB at p. 561):

"In considering this issue, we are willing, for the purposes of this case, to recognize the factual merit of the Union's claim that the employees committed a patent breach of their union membership contract by submitting resignations in September, 1953. To the extent that the employees used their 'resignations' as reasons for refusing to contribute dues for the period between the end of the 1950 contract and the date they were permitted to resign under the Union's rules, the Union was involuntarily deprived of the financial benefits insured to it under the membership contract. In these circumstances, a part, if not all, of the Union's demands upon the employees for dues following their acts of disaffiliation from the Union can be viewed, factually, as attempts to remedy the effect of an employee breach of an *intraunion* membership contract. The question we must here decide, however, is whether the Union was entitled to use the sanction of actual or threatened discharge action against the charging employees to overcome the effect of the employees' acts of disaffiliation under the circumstances of this case."

It is apparent from the above-quoted extract that the national labor relations board did not consider that either the maintenance-of-membership clause in a collective-bargaining contract, or sec. 7 of the Taft-Hartley Act, supersedes

the *intraunion* membership contract contained in a union's constitution in so far as a member's liability for payment of dues is concerned. The facts in the instant case are clearly distinguishable from those in the *Marlin Rockwell Corp. Case* because there was no attempt here on the part of the Union to cause the employer to threaten the defendant with discharge from her employment as a sanction to compel payment of delinquent dues.

When we examine into the underlying purpose of including a maintenance-of-membership provision having an escape clause in a collective-bargaining contract, we perceive the logic of the above-quoted dictum from the *Marlin Rockwell Corp.* decision. In the bargaining sessions which take place between a union and an employer in negotiating terms for a collective-bargaining contract, it is customarily the union and not the employer who demands inclusion of some compulsory union-membership provision. The chief difference between a maintenance-of-membership clause and one calling for a union shop is that the former does not apply to nonmembers of the union while the latter does. 2 CCH, Labor Law Reporter, par. 4520.69. Under both types of clause the union gains the sanction of threatened discharge by the employer of any employee, to whom the clause is applicable, who fails to pay dues for the period of compulsory membership specified in the collective-bargaining contract. The employer, who agrees to a maintenance-of-membership clause, usually has no concern with the intraunion contract existing between the union and its members with respect to payment of dues. What the employer is concerned about is the extent to which he is required by the collective-bargaining contract to exert pressure upon his employees to force them to pay dues.

During World War II the national war labor board, in cases in which the union and employer could not agree on whether a collective-bargaining contract should contain a

union security clause, frequently resolved the controversy by ordering that the collective-bargaining contract include a maintenance-of-membership clause with a specified escape period during which employee members of the union might withdraw from membership. The maintenance-of-membership clause was adopted by such board as a compromise between employer demands for an open shop and those of organized labor for a closed shop. 48 Columbia Law Review, 156, 157, and 57 Harvard Law Review, 183, 213. Subsequent to the war many collective-bargaining agreements voluntarily arrived at through negotiations between the employer and the union have contained maintenance and membership clauses, which clauses usually provide for an escape period. However, such escape period is not required by statute. 2 CCH, Labor Law Reporter, par. 4520.69. It is usually the employer rather than the union who desires the inclusion of such escape clause. It would seem apparent that employer's objective in requesting inclusion of such a clause is so that there will be less likelihood of his having to discharge some employee, who is unwilling to continue to pay dues to the union, than would be the case if no escape clause were included in the contract.

During the period that the national war labor board was functioning, it unanimously adopted a resolution on November 28, 1942, ordering all unions, which were granted a maintenance-of-membership clause in a collective-bargaining contract, to amend their constitutions and by-laws so that union members could withdraw without much difficulty within the fifteen-day-escape period. See "The Maintenance-of-Membership Clause," 57 Harvard Law Review, 183, 217. This action tacitly recognized that a maintenance-of-membership escape-period clause did not automatically supersede the provisions of the union's constitution and by-laws governing such matters as liability for dues. Such resolution of the national war labor board ceased to have any effect after

the war emergency terminated and the board went out of existence.

It is our considered judgment that the maintenance-of-membership escape-period clause in the instant collective-bargaining contract did not supersede the provisions of article 6, section 16, of the International Union's constitution. The only effect of the defendant's notice of withdrawal of membership during the escape period was to remove the sanction of discharge by the employer for any failure on the part of the defendant to pay dues after that date.

*By the Court.*—Judgment reversed, and cause remanded with directions to render judgment in accordance with the prayer of the plaintiff's complaint.

FAIRCHILD, J., took no part.