LOCAL 31, NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES AND TECHNICIANS (AFL–CIO), Appellant,

v.

Ortiz TIMBERLAKE, Appellee.

No. 79–154.

District of Columbia Court of Appeals.

Submitted Oct. 17, 1979.

Decided Dec. 21, 1979.

---

Lawrence S. Lapidus, Washington, D. C., was on brief, for appellant.

Ed Wilhite, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KERN and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

The appellant, Local 31, National Association of Broadcast Employees and Technicians (AFL–CIO) [hereinafter Local 31] was granted review of a judgment from the Small Claims and Conciliation Branch of the Civil Division of the Superior Court on

its action on a debt for a special union strike assessment past due and owing from appellee. The trial court granted Mr. Timberlake's set-off for his payments on an initiation fee which were not credited to his union account resulting in a complete set-off for him. We conclude that the trial court erred by denying the union's request to call certain witnesses concerning Mr. Timberlake's nonentitlement to the set-off. The judgment is reversed and the case is remanded for further proceedings.

## I

Local 31, is a multi-employer local labor organization which represents engineering and technical personnel at many of the major television and radio stations in the District of Columbia. It brought suit to collect a debt in the amount of $188.47 and costs. The debt was based on a standing strike assessment resolution which was passed by the Executive Board of Local 31 on October 25, 1967, and approved by a majority of the membership after a secret ballot on November 6, 1967.[1] The union assessed Mr. Timberlake an undisclosed amount by virtue of his employment with the National Broadcasting Company (NBC) and membership in Local 31 from May 17 through September 30, 1977. Mr. Timberlake left his employment with NBC in October 1977. However, he returned to NBC in March 1978, and rejoined the union. When Local 31 filed suit on July 17, 1978, $188.47 of Mr. Timberlake's total assessment was still due and owing. In the trial proceedings the parties agreed that the validity of that assessment

was established in a previous ruling by Judge Block on June 26, 1978. *Local 31, National Association of Broadcast Employees and Technicians, AFL–CIO v. Childs and Wishard,* S.C. 2052–78 and S.C. 2069–78.[2]

At trial, Mr. Timberlake asserted a defense of lack of notice that such an assessment could be levied against him by the union. The court ruled that lack of notice was not a valid defense.[3] Mr. Timberlake then asserted a set-off based upon a $196.28 payment of an initiation fee he paid to the union during his employment by NBC from May to October, 1977. The union refused to credit this payment towards his initiation fees when he was reemployed by NBC in 1978. Mr. Timberlake testified that he attempted to become an "inactive" member, thereby receiving credit for payments towards his initiation fee, when his employment terminated in October 1977. However, the union refused to grant him "inactive" status because his strike assessment was not fully paid.[4] Mr. Timberlake was his only witness regarding his entitlement to a set-off. He was cross-examined by counsel for Local 31. At the close of Mr. Timberlake's evidence, Local 31 moved for a directed verdict on the basis that the "defense did not demonstrate any relationship between an initiation fee and the special assessment." As counsel attempted to demonstrate the lack of a nexus between the two payments, the court foreclosed argument. Counsel for Local 31 immediately sought to call witnesses. The court refused

---

1. The assessment reads as follows: "Move that each member of local 31 shall be assessed an amount equal to two hours pay per week for the support of any contract group on strike in Local No. 31. This referendum, if approved, shall supersede all other strike assessments and shall become effective immediately upon passage of the referendum."

2. Consequently, the validity of that assessment or the court's ruling is not before this court in this appeal.

3. We draw no conclusion as to the correctness of that ruling since it was not part of the appeal. However, at least one commentator has argued that notice considerations are relevant to state court collection of disciplinary

fines. Such considerations could equally apply to assessments. Wellington, *Union Fines and Worker's Rights,* 85 Yale L.J. 1022, 1051–53 (1976).

4. No allegations are made that Mr. Timberlake was denied union membership or that his employment status was threatened because of nonpayment of the assessment. Such allegations would no doubt result in N.L.R.B. preemption of this claim due to the implications of an unfair labor practice. *N.L.R.B. v. Die and Tool Makers Lodge No. 113,* 231 F.2d 298 (7th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 50, 1 L.Ed.2d 53 (1956).

to permit counsel to do so, and summarily ordered judgment with full effect to the set-off, reducing the amount to zero.

Local 31 asserts that the trial court committed reversible error by (1) denying appellant's request to call witnesses and (2) holding that Mr. Timberlake's payment of an initiation fee was a set-off against the special assessment.

## II

■ Preliminarily it should be noted that "a union's constitution and bylaws constitute a contract between the union and its members, which . . . may be enforced in state courts." *Local 248 UAW v. Natzke,* 36 Wis.2d 237, 248–249, 153 N.W.2d 602, 608 (1967). The jurisdiction of the Superior Court and the District of Columbia Court of Appeals is "parallel to that of a state court." 1 Moore's Federal Practice ¶ 0.4[4], at 78–80 (2d ed. 1979); *see Palmore v. United States,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).[5] Thus, where the matters at issue in a union dispute are purely internal, allege no unfair labor practice, and offer no conflict with federal policy, state courts have jurisdiction to decide the case according to state law. *See Scofield v. National Labor Relations Board,* 394 U.S. 423, 426 n.3, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969); *International Association of Machinists v. Gonzales,* 356 U.S. 617, 78

S.Ct. 923, 2 L.Ed.2d 1018 (1958).[6] A union may, consistent with its by-laws and constitution, engage in activities for the welfare of its members. The creation of strike funds is within the power of a union.[7]

■ When joining a union, a member agrees to abide by the constitution and by-laws of the organization. A validly imposed union assessment creates a "binding obligation in the form of a debt . . . which [is] subject to collection by court action."[8] *Local 248 UAW v. Natzke, supra* (the rationale of this case was applied to state court collection of union fines and is equally applicable to collection of assessments); *cf. National Labor Relations Board v. Allis-Chalmers Manufacturing Co.,* 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967) (the imposition of fines by a labor union is not an unfair labor practice and such fines may be enforced in a state court).

■ Upon the court's rejection of Mr. Timberlake's defense of lack of notice, he asserted a set-off to the assessment for payments made on an initiation fee which was not credited to his account upon his return to union membership. The union denied him credit due to his failure to become an "inactive" member upon his departure from the union in October 1977. He was told he was ineligible for "inactive" status because he had not paid the full

---

5. The state court jurisdiction of union disputes must be contrasted to federal court jurisdiction which is controlled by statute. *Bunz v. Moving Picture Mach. Operators, etc.,* 186 U.S.App. D.C. 124, 127, 567 F.2d 1117, 1120 (1977); *Carroll v. Assoc. Musicians of Greater New York, Local 802,* 235 F.Supp. 161, 174 (S.D.N.Y.1963). "Absent an express basis for federal jurisdiction, power to decide whether a union has abided by its own by-laws and rules, remains with the state courts." *Id.*

6. State court jurisdiction of internal union disputes has been further clarified in *Sears, Roebuck & Co. v. Carpenter,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), and *Amalgamated Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

7. Employers may deduct such assessments from an employee's paycheck as authorized by "checkoffs," *International Union of Mine, Mill and Smelter Workers, Local 515 v. American*

Zinc, Lead & Smelting Co., 311 F.2d 656 (9th Cir. 1963); however, such assessments are not considered dues for the purposes of the National Labor Relations Act, § 8(a)(3)(B) and (b)(2), as amended by 29 U.S.C. § 158(a)(3)(B) and (b)(2), the nonpayment of which would justify termination of union membership. *International Union of Mine, Mill and Smelter Workers, Local 515 v. American Zinc, Lead & Smelting Co., supra* at 658–60. *See also Journeymen Plasterers' Pro. and Ben. Soc. of Chicago v. N.L.R.B.,* 341 F.2d 539 (7th Cir. 1965); *N.L.R.B. v. Food Fair Stores, Inc.,* 307 F.2d 3 (3rd Cir. 1962).

8. *See also Local No. 261, International Union United Auto., Aircraft and Agricultural Implement Workers of America v. Schulze,* 3 Wis.2d 479, 89 N.W.2d 191 (1958), where state court action was used to collect union dues alleged to be owing.

amount of the strike assessment. The union argues that the set-off should have been disallowed because of its lack of relationship to the assessment. However, it appears that the union has confused a set-off with a counterclaim. A set-off is "[a] counter demand which defendant holds against plaintiff, arising out of a transaction *extrinsic* of plaintiff's cause of action." Black's Law Dictionary, (4th ed. 1951) (emphasis added). No relationship in the transactions must be asserted. D.C.Code 1973, § 16–3904, authorizes the judge in a Small Claims action to hear either a set-off or a counterclaim by a formal pleading or, in his discretion, may waive the formal pleading. Thus, the set-off was properly before the court.

■ The pertinent issue in resolving Mr. Timberlake's entitlement to the set-off for his payments made towards his initiation fee would depend on whether he was entitled to the status of "inactive" membership upon his departure from NBC in October 1977. Such a determination would be based upon the constitution and by-laws of the union. The court must review the union's action in this case to determine whether according to the union's own rules, Mr. Tim-

berlake was entitled to "inactive" status in October 1977, thus qualifying him for the credit towards his initiation fee upon his return to the union. *Cf. Hubert and Marshall v. Fox*, La.App., 291 So.2d 514 (1974) (state court had jurisdiction to determine whether plaintiff union members had right to recover monies deposited with union to be applied to their initiation fee). Here, the court refused to consider the union's constitution and by-laws and the union's interpretation of them. The court erred in this regard. It must look to the union's constitution and by-laws and rule whether the union's construction of these provisions was fair and reasonable as they were applied to Mr. Timberlake's application for "inactive" status. *See English v. Cunningham*, 108 U.S.App.D.C. 365, 367, 282 F.2d 848, 850 (1960).

*Reversed and remanded.*