Richard I. JOHNSON, Appellant,

v.

FAIRFAX VILLAGE CONDOMINIUM IV UNIT OWNERS ASSOCIATION, Appellee.

No. 90–CV–201.

District of Columbia Court of Appeals.

Argued June 18, 1992.

Decided May 12, 1994.

Bernard A. Gray, Sr., Washington, DC, for appellant.

Benny L. Kass, Washington, DC, for appellee.

Before TERRY, STEADMAN, and WAGNER, Associate Judges.

WAGNER, Associate Judge:

Appellant, Richard I. Johnson, appeals from a decision of the trial court granting the request of appellee, Fairfax Village Condominium IV Unit Owners Association (the Association), for judicial foreclosure of a lien against Johnson's condominium unit. This case was previously before this court upon appellant's successful challenge to the trial court's grant of summary judgment in favor of the Association. *See Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 548 A.2d 87 (D.C.1988) (*Johnson I*). In the present appeal, Johnson argues for reversal on the grounds that the trial court erred in the proceedings following remand by: (1) granting the Association leave to amend its complaint for possession and to substitute a claim for judicial foreclosure; (2) denying him a jury trial; (3) barring his challenge to the Association's actions on the ground that its Board of Directors was improperly elected; (4) declining to hold that the two prior foreclosures were wrongful; and (5) denying his claim for damages for wrongful foreclosure. We conclude that, at least with respect to Johnson's claim for damages for wrongful foreclosure, a legal issue was raised for which he was entitled to a jury trial on any remaining meritorious claims. As to the other issues raised on appeal, we find no reversible error. Therefore, we affirm in part and reverse in part.

## I.

The factual background prior to remand is set forth in detail in this court's opinion in *Johnson I.* Only a brief summary of the facts underlying the prior appeal is required here for an understanding of the issues arising out of the proceedings after remand. Johnson concededly ceased paying the condominium assessments for his unit to the Association in 1981. In 1983, the Association, purportedly acting pursuant to the power of sale provision in D.C.Code § 45–1853(c) (1990), sold the unit, subject to the first mortgage, at a public sale to one Esther Wiggins, who paid the delinquent assessments as part of the purchase price. Wiggins was unable to obtain possession from Johnson, and she ceased paying the required assessments. Therefore, the Association, after notice to Johnson and Wiggins, foreclosed again, relying on the statute. The Association purchased the unit at the second auction, there being no other bidders, although Johnson attended.

Thereafter, the Association filed a suit for possession in the Landlord–Tenant Branch of the Superior Court because Johnson failed to vacate the premises. Johnson asserted a plea of title and demanded a jury trial; therefore, the case was certified to the

Civil Division of the court.[1] There it was consolidated with a claim Johnson had filed after the first foreclosure sale in which he challenged the Association's power to sell the unit in the absence of a judicial foreclosure proceeding.[2] Johnson sued the Association, certain members of its Board of Directors, and Esther Wiggins, the purchaser at the first foreclosure sale of the subject property. In his amended complaint in that action, Johnson alleged wrongful foreclosure and sought alternatively reconveyance of the property or damages in the amount of the premises sold and punitive damages against the individual defendants, except for Wiggins. He made no jury demand in that complaint.[3] The trial court granted summary judgment for the Association. Johnson had contended that the statutory power of sale provision under which the Association foreclosed was not contemplated by, nor incorporated into, the by-laws for the condominium. The by-laws had been adopted before the enactment of D.C.Code § 45–1853(c).[4] In *Johnson I*, we reversed the grant of summary judgment for the Associa-

tion because the trial court failed to address this issue, which required its consideration of various condominium instruments. 548 A.2d at 94.[5]

Following remand, the trial court (Judge Paul Webber) vacated the order granting summary judgment for the Association after the Association was unable to "direct the court's attention to any provision of the contract of sale for the condominium unit, or other relevant condominium instruments, which might demonstrate that [Johnson] impliedly or expressly consented to be bound by future amendments to the Condominium Act, so as to entitle [the Association] to judgment as a matter of law." The court then granted the parties 15 days within which to file motions and certified the case to the Civil Assignment Office for the scheduling of a trial date. The Association filed a Motion for Leave to File an Amended Complaint in order to seek judicial foreclosure. The trial court (Judge Henry Kennedy) granted the motion on April 18, 1989 and deemed the

1. Pursuant to Super.Ct. L & T R. 6, cases in which a jury demand is made properly will be certified to the Civil Division for trial on an expedited basis. Similarly, where a defendant interposes a plea of title in a landlord-tenant action, upon the filing of an undertaking approved by the court, the case is certified to the Civil Division for an expedited trial. Super.Ct. L & T R. 5(c).

2. In *Johnson I*, we observed that Johnson's claim alleging wrongful foreclosure had been raised in, but severed from, an action challenging the Association's authority to promulgate and enforce certain parking regulations at the condominium development. 548 A.2d at 88 & 88 n. 2.

3. Johnson did not designate as a part of the record on appeal the counterclaim in the landlord-tenant suit in which he filed a plea of title and made a jury demand. That case was consolidated with the amended complaint for wrongful foreclosure in which he made no jury demand. Appellant bears the burden of presenting a record adequate to demonstrate error. *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C. 1982). Therefore, to the extent that it may be necessary to review the pleadings involving the plea of title to resolve any of the issues raised by appellant, he must bear the consequences of its omission. However, it appears from the transcript that the proceedings after remand did not involve the suit for possession and plea of title.

4. D.C.Code § 45–1853(c) provides that a lien arising from unpaid condominium assessments may be enforced by power of sale unless the condominium instruments provide otherwise. *See also Lonon v. Fairfax Village Condominium IV Unit Owners Ass'n*, 535 A.2d 1386, 1387 (D.C. 1988).

5. The opinion included the following pertinent instructions and comments:

> On remand, the trial court must examine *all of the contract documents* that delineate the parties' rights to determine whether the parties intended to be bound by subsequent amendments to the Condominium Act. If the court finds that appellant did not impliedly or expressly consent to be bound by permissive changes in the law, then the Association improperly foreclosed on appellant's unit, and, *a fortiori*, appellant would have a superior right to title and possession of the condominium unit.
>
> \* \* \* \* \* \*
>
> In any event, however, appellant remains liable for the unpaid assessments levied against his unit. D.C.Code § 45–1852(c). The Association is not precluded from commencing a judicial foreclosure action to recoup the delinquent assessments. *See* D.C.Code § 45–1853(g); *see also Lonon, supra*, 535 A.2d at 1388.

*Johnson I*, 548 A.2d at 94.

previously tendered amended complaint filed as of that date.

In the amended complaint, the Association abandoned its prior claim for possession and sought only judicial foreclosure based upon Johnson's failure to pay condominium fees, late charges and attorney's fees. In answer to the amended complaint, Johnson admitted that the Association was entitled to petition for judicial foreclosure, "but under the terms as determined by the court...." He also admitted that he had not personally paid the assessments on the unit, although they had been paid.[6] Johnson also asserted as defenses (1) that the Association's Board, which made the initial assessments, lacked authority to do so; (2) that the amount claimed due was not correct; (3) that he was entitled to an offset for his damages arising out of the Association's wrongfully holding title; and (4) that the Association failed to provide a detailed accounting as required by law. Without leave of court, Johnson also filed a counterclaim for compensatory and punitive damages for two wrongful foreclosures, and he demanded a jury trial on all triable issues. Although the Association objected to Johnson's counterclaim, it conceded that the issue in the pending consolidated claim was basically the same and presented the same issue.

In proceedings prior to trial before Judge Shuker, Johnson conceded that the determination of whether the 1982 and 1985 foreclosures were wrongful and whether a judicial sale was warranted were equitable issues for consideration by the court. However, Johnson took the position that his claim for money damages resulting from the Association's improper foreclosures by power of sale and how much money he owed the Association were legal issues. As to these legal issues, he contended that he was entitled to a jury trial. The court decided to proceed with the equitable issues without a jury before considering "whether there [was a legal damages question]."

The trial court determined that the Association had valid liens at the time of the 1982 and 1985 foreclosures, although the Association used an improper means to enforce them. The court then turned to the Association's claim for judicial foreclosure. Johnson again requested a jury trial, arguing that if damages were awarded against the Association for the improper foreclosures, the sums awarded should offset any amounts claimed by the Association as the basis for the judicial foreclosure action. Johnson cited in support of his position the case of *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) (only under the most imperative circumstances will "right to a jury trial of legal issues be lost through prior determination of equitable claims"). The trial court ruled that judicial foreclosure is an equitable proceeding in which the amount due by the obligor is always an issue and that it could not convert the proceeding to a legal one. The court rejected Johnson's argument that his separate claim for damages should be joined with the judicial foreclosure proceeding because any damage recovery might be sufficient to offset the sums due, and thereby defeat the basis for foreclosure. The court determined that the suit for damages for wrongful foreclosures in 1982 and 1985 was not "a joinable action on the issue of foreclosure at this time."

Following these proceedings, the trial court issued a written order making the following findings and conclusions: (1) the contract documents for the Association did not authorize foreclosure by power of sale upon Johnson's unit, since Johnson purchased the unit prior to the effective date of the Condominium Act of 1976; (2) Johnson owed the Association condominium fees, late fees, simple interest, and attorney's fees as of the date of the court's order in the total amount of $10,150.21, which would be the redemption amount;[7] (3) the Association's improper exe-

---

6. Johnson was apparently relying on the fact that some of the assessments had been paid by Esther Wiggins, the purchaser at the first foreclosure sale. *See Johnson I, supra*, 548 A.2d at 88. Additionally, he stated that he had been making deposits into the Registry of the Court.

7. These fees included the following: condominium and late fees of $8,252.36, $660.00 in simple interest at 8 percent, and reasonable attorney's fees of 15 percent through the date of the Court's Order in the amount of $1,237.85. The total of $10,150.21 was determined to be the redemption amount through November 30, 1989, subject to

cution of its clear right to foreclose did not entitle Johnson to damages and that there was no evidence of malice; and (4) Johnson was collaterally estopped from contesting the validity of the election of the Board of Directors. Therefore, the court ordered that the deeds conveying title to Wiggins and subsequently to the Association be declared null and void and that legal title was vested in Johnson. The court granted the Association's request for judicial foreclosure, allowing Johnson to avoid it by paying the redemption amount which the court reduced by the $5,087.57 he had deposited into the Registry of the Court. Finally, the court denied Johnson's request for attorney's fees and for damages for wrongful foreclosure.

## II.

Johnson argues that the trial court abused its discretion in granting the Association leave to amend the complaint to substitute a claim for judicial foreclosure. After the filing of responsive pleadings, leave to amend is within the discretion of the trial court. Super.Ct.Civ.R. 15(a); *Gordon v. Raven Systems & Research, Inc.*, 462 A.2d 10, 13 (D.C.1983). Leave to amend is to be granted freely "when justice so requires." Super.Ct.Civ.R. 15(a); *see also Bennett v. Fun & Fitness of Silver Hill, Inc.*, 434 A.2d 476, 478 (D.C.1981). Absent a clear showing of an abuse of discretion, the trial court's exercise of its discretion either way will not be disturbed on appeal. *Brown v. Dyer*, 489 A.2d 1081, 1084 (D.C.1985); *Gordon*, 462 A.2d at 13. "Although the decision is a matter of trial court discretion, the policy favoring resolution of cases on the merits creates 'a virtual presumption' that a court should grant leave to amend where no good

reason appears to the contrary." *Bennett*, 434 A.2d at 478 (citations omitted).

In considering a motion to amend, several factors guide the trial court's exercise of its discretion, as well as this court's determination of whether the trial court has abused its discretion in ruling thereon. Among these are: (1) the number of requests to amend; (2) the length of time that the trial has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the non-moving party. *Bennett, supra*, 434 A.2d at 478–79; *Bronson v. Borst*, 404 A.2d 960, 963 (D.C. 1979). Johnson argues that weighing in his favor are three of these factors, *i.e.*, the length of the pendency of trial, bad faith and dilatory motive, and prejudice. This case had been pending almost four years when the Association sought leave to amend to substitute its request for judicial foreclosure. Therefore, as Johnson claims, the time factor seems to support his position. However, when balanced against the other considerations, we cannot conclude that the trial court had no reasonable grounds for exercising its discretion as it did.

In considering the Association's motive for filing the amended complaint, the trial court had before it the Association's memorandum which bears upon that determination.[8] The Association represented that its objective was either to obtain payment for the assessments, most of which Johnson admittedly had not paid, and restore Johnson to his unit, or to foreclose in an effort to obtain the funds. It also stated that the Association had limited financial resources and selected this course in consideration of this court's pronouncement in *Johnson I* of the availability of the judicial foreclosure

---

an increase each month thereafter as additional monthly assessments accrued.

8. The trial court's order outlines its consideration of the Association's motion, Memorandum of Points and Authorities in support of the motion, Rule 12–I of the Civil Rules of the Court, the proposed amended complaint, and the opinion of this court in *Johnson I*.

Appellant also points out that the trial court cited incorrectly Super.Ct.Civ.R. 12–I in addressing the issue, while it is Super.Ct.Civ.R. 15(a)

which governs. A review of the pleadings before the court suggests that this was a mistake in the citation to the rule governing motions to amend pleadings. Both Johnson and the Association cited Rule 12–I to the trial court in error. However, it is clear from the pleadings before the court that the rule covering amendments was intended and referenced. Therefore, this misstatement is without significance in our analysis, and it does not appear that Johnson contends otherwise.

remedy and Johnson's continued liability for the unpaid assessments for his unit.[9] *See Johnson I, supra,* 548 A.2d at 94. The Association stated that it felt that the need for further discovery and a trial could be avoided by proceeding with judicial foreclosure. Considering these representations and that the alternative would have been the filing of a new case involving some of the same issues related to the payment of the assessments, we discern from the record no suggestion of bad faith or dilatory motive in the Association's request to amend.[10]

Johnson claims generally that he was prejudiced by the addition of the new claim, apparently because he believed that he was in a position to defend successfully against the prior claim. Both the Association's prior claim and the amended claim depended primarily upon whether Johnson failed to pay the required assessments for his unit. Johnson asserted some of the same defenses to each of the claims. Thus, there was no element of surprise as to the factual basis for the relief sought by the Association. Under these circumstances, we perceive no prejudice which would require denial of the motion to amend. Finally, the merit factor also weighed in favor of granting the motion. Johnson never denied that he did not pay the Association all of the assessments. As this court pointed out in *Johnson I,* Johnson is liable for the unpaid assessments, and the Association could institute judicial foreclosure proceedings to enforce its lien. 548 A.2d at 94. Under the circumstances, we find no abuse of discretion in the trial court's ruling on the motion for leave to amend.

### III.

■ Johnson also argues that the trial court erred in holding that estoppel principles precluded him from challenging the validity of the election of the Board of Directors of the Association. Johnson's theory was that the assessments underlying the Association's lien were invalid because the Board was improperly elected. In *Johnson I,* this court held that the trial court did not err in concluding that there was no material issue of fact in dispute regarding this issue. 548 A.2d at 89. Nevertheless, Johnson argues that when the trial court vacated the order granting summary judgment after remand, the effect was to revive this issue in the trial court. Our opinion in *Johnson I* required that the proceedings on remand be consistent with the opinion. Accordingly, it was not required or contemplated that the court vacate that portion of its ruling which this court sustained. *See* Super.Ct.Civ.R. 56(d) (partial summary judgment).

■ Johnson also litigated the same issue unsuccessfully against the Association in *Johnson v. Hobson,* 505 A.2d 1313 (D.C. 1986). In *Hobson,* Johnson and other unit owners challenged the authority of the Board of Directors of the Association to implement regulations authorizing the towing of unlicensed cars from the parking lot at the condominium. 505 A.2d at 1314. On appeal, the unit owners argued that the trial court erred in granting summary judgment, particularly contending that there existed a factual dispute as to whether the Board had been elected properly, and therefore had the power to promulgate the regulations. *Id.* at 1316. In affirming the grant of summary judgment in favor of the Board, this court found from a

---

9. See *supra* note 5, for a quote from the pertinent section of the opinion.

10. Johnson argues for the first time on appeal that the Association's claim for the assessments prior to three years before the filing of any suit for judicial foreclosure would have been barred by the statute of limitations. Issues not raised first in the trial court generally will not be considered on appeal. *Cannon v. District of Columbia,* 569 A.2d 595, 596 (D.C.1990); *District of Columbia v. Bethel,* 567 A.2d 1331, 1334 (D.C. 1990). The statute of limitations is an affirmative defense which must be pleaded and proved, or it may be deemed waived. *Mayo v. Mayo,* 508

A.2d 114, 116 (D.C.1986); Super.Ct.Civ.R. 8(c); *cf. Whitener v. Washington Metropolitan Area Transit Authority,* 505 A.2d 457, 460 (D.C.1986). In any event, the three year statute of limitations may well not be applicable to the causes of action involved in this case. *See Peters v. Suter,* 9 D.C. (2 Mac Arth.) 516, 518–19 (1876); *see also King v. Kitchen Magic, Inc.,* 391 A.2d 1184, 1186–87 (D.C.1978) (doctrine of laches serves as limitation on filing equitable action); D.C.Code § 12–301(1) (1989) (15 year period of limitations applies to suits to recover "lands, tenements, or hereditaments"); *Parr v. Parr,* 268 S.C. 58, 231 S.E.2d 695, 699 (1977).

review of the record that appellants failed to demonstrate the existence of any factual dispute on this issue. *Id.* at 1316–17.

■ The trial court in this case determined that Johnson was urging the same theory advanced in the prior proceedings and rejected Johnson's argument that either a new election of officers each year or the filing of the amended complaint by the Association would allow relitigation of the issue. The doctrine of res judicata bars relitigation of the same claim in a subsequent lawsuit between the same parties. *District of Columbia Redevelopment Land Agency v. Dowdey,* 618 A.2d 153, 163 (D.C.1992); *Kleinbart v. United States,* 604 A.2d 861, 864 (D.C. 1992). A related doctrine, collateral estoppel, precludes the same parties from relitigating an issue of fact or law litigated and determined in a prior lawsuit between the same parties whether for the same or a different claim. *Dowdey,* 618 A.2d at 163. "A question is actually litigated when properly raised by the pleadings and submitted and decided by the court." *Id.; Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 422 (D.C.1984). The Association contends, and the trial court concluded, that the issue had been litigated and decided previously and that the doctrine of collateral estoppel barred Johnson from raising the election issue again.

In his answer to the amended complaint, Johnson stated in defense that

The [Association] failed to properly elect the Board of Directors who made the initial assessments and thus had no authority to continue to demand assessments to which it is not entitled.

In *Hobson,* the issue between the appellants (including Johnson) and the Association was likewise whether the Board was properly elected and thus empowered to act as such. 505 A.2d at 1316–17. The issue was litigated and resolved by summary judgment, which was affirmed on appeal. We conclude that the doctrine of collateral estoppel precludes

Johnson from challenging the Board's elections based on the same legal theory.[11] *See Dowdey, supra,* 618 A.2d at 163.

■ The trial court also ruled that the same issue was barred from relitigation based upon law of the case principles. The law of the case doctrine prevents relitigation of the same issue in the same case by courts of coordinate jurisdiction. *Kaplan v. Pointer,* 501 A.2d 1269, 1270 (D.C.1985); *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1196 (D.C.1984). It facilitates the disposition of cases by preventing judge-shopping and repeated attempts by a party to obtain a favorable ruling on the same issue. *Williams v. Board of Trustees of Mount Jezreel Baptist Church,* 589 A.2d 901, 907 (D.C.), *cert. denied,* —— U.S. ——, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991). The doctrine applies when the first ruling has sufficient finality and when it is not "clearly erroneous in light of newly-presented facts or a change in substantive law." *Kritsidimas v. Sheskin,* 411 A.2d 370, 372 (D.C.1980); *accord, Williams,* 589 A.2d at 907.

In *Johnson I,* this court determined that the trial court's ruling on summary judgment, insofar as it rejected Johnson's election challenge, was correct. This ruling had sufficient finality to be accorded law of the case treatment. *See Kaplan v. Pointer, supra,* 501 A.2d at 1270 (order denying summary judgment possesses sufficient finality for application of law of the case doctrine). The trial court gave Johnson an opportunity to proffer evidence of the claimed infirmities in the election of the Board, and it concluded that Johnson offered no new theory. We find no basis upon which to disturb the trial court's ruling in this regard.

**IV.**

■ In the amended complaint challenging the legality of the first foreclosure, Johnson sought alternatively, reconveyance of the property and nominal damages, or compensa-

---

11. Johnson asserted that the Board was elected contrary to the by-laws "from day one." In answer to the amended complaint, Johnson claimed only that the Board which made the "initial assessments" had no authority to do so. We find no basis in the record to support appel-

lant's claim that the trial court erred in concluding that Johnson relied on the same legal theory to challenge any new Board and any assessments made by them. Thus, we find no error in the collateral estoppel ruling of the trial court.

tory damages for the value of the property sold and punitive damages. Johnson did not request a jury trial in connection with this complaint. In response to the Association's amended complaint for judicial foreclosure, Johnson filed a counterclaim for compensatory and punitive damages arising out of the foreclosures undertaken by the Association in November 1982 and on May 7, 1985. Johnson made a jury demand on all "the jury triable issues." [12] The trial court denied Johnson's request for a jury trial on the claims, an issue which we address in the next section of this opinion. The court determined that since Johnson was in arrears at the time of the earlier foreclosures, he "was not entitled to damages for the Association's improper execution of its clear right to foreclose on the liens." Johnson argues on appeal that the trial court erred in this ruling because he is entitled to any damages arising out of the improper foreclosures whether or not the Association had a valid lien at the time. The law in this jurisdiction provides support for Johnson's position.

█ In an action for damages for wrongful foreclosure and wrongful eviction, this court affirmed the decision of the trial court directing a verdict on liability on both counts against the bank, which had foreclosed, because the notice of foreclosure was defective. *Independence Federal Sav. Bank v. Huntley,* 573 A.2d 787 (D.C.), *cert. denied,* 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990). The bank's primary argument on appeal was that its failure to comply strictly with the statutory notice requirement was cured by the owner's actual knowledge and presence

at the foreclosure sale. *Id.* at 787. We rejected that argument, concluding that the notice provisions of such foreclosure statutes must be complied with strictly. *Id.* at 787–88. Although the issue presented in this case is not identical to the issue addressed in *Huntley,* it is analogous to it in a significant respect. If an action will lie for consequential damages where the lienholder simply fails to give proper notice, it should also be available when the lienholder forecloses without following the statutory requirements at all.[13] Long before the opinion in *Huntley,* a recovery of compensatory damages was affirmed in a suit for wrongful execution of a foreclosure and for wrongful eviction where the property owner was in default on the loan secured by the property. *See Ballard v. Spruill,* 64 App.D.C. 60, 74 F.2d 464 (1934), *cert. denied,* 293 U.S. 625, 55 S.Ct. 349, 79 L.Ed. 712 (1935).[14]

█ Nevertheless, the Association argues that Johnson could not sue for wrongful foreclosure "or rightful foreclosure wrongfully executed" because of his delinquency in payments and the resulting lien in favor of the Association at the time of the foreclosure sales. In support of this position, the Association relies on cases from other jurisdictions. Chief among these is *Collins v. Union Federal Sav. & Loan Ass'n,* 99 Nev. 284, 662 P.2d 610 (1983), in which the Nevada Supreme Court, reversing a grant of summary judgment on the issue, identified the material issue of fact in a wrongful foreclosure action to be "whether the trustor was in default when the power of sale was exercised." [15]

---

12. The Association makes no argument about the effect, if any, of Johnson's failure to demand a jury trial in his amended complaint on his subsequent request for similar relief in his answer and counterclaim filed in response to the Association's amended complaint in the consolidated case.

13. The lien for assessments against a condominium unit can be enforced by a power of sale only if the condominium instruments do not provide otherwise. D.C.Code § 45–1853(c). The trial court found that the pertinent condominium documents did not allow for foreclosure by power of sale, and the Association does not contend otherwise in this appeal. Therefore, the Association was required to proceed by judicial foreclosure. *See Johnson I, supra,* 548 A.2d at 94.

14. We are not persuaded by the Association's argument that it is likely that damages would not have been awarded in *Ballard* and, by implication, that a cause of action for wrongful foreclosure would not lie if there had not been a wrongful eviction.

15. The court also stated that

[a]n action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale. *Collins, supra,* 662 P.2d at 623 (citations omitted).

662 P.2d at 623. To the extent that this case and the other authorities cited by the Association purport to set out the elements for an action for wrongful foreclosure, we are not persuaded that they provide an exclusive basis for the action. In any event, in light of the decisions in this jurisdiction in *Huntley* and *Ballard*, we view our law to be otherwise. It also seems to be the better approach to allow a claim for damages resulting from a foreclosure conducted in contravention of the requirements of law. Therefore, we hold that an action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law. *See Huntley, supra*, 573 A.2d at 788.

V.

Finally, Johnson argues that the trial court erred in denying him a jury trial. In his amended complaint in the earlier action, which the parties agreed remained pending, Johnson sought alternative relief, *i.e.,* that the foreclosure be set aside and that he be awarded nominal damages, or absent a set aside, that he be awarded compensatory and punitive damages for the wrongful foreclosure. In his answer to the Association's amended complaint for judicial foreclosure and counterclaim to that action, Johnson demanded a jury trial on "all triable issues." He takes the position that the Association's complaint for foreclosure based upon his nonpayment of condominium assessments and his request for damages for two earlier wrongful foreclosures raise purely legal claims for which he is entitled to a trial by jury. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476–77, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962); *Kudon v. f.m.e. Corp.*, 547 A.2d

976, 978 (D.C.1988); *National Life Insurance Co. v. Silverman*, 147 U.S.App.D.C. 56, 62, 454 F.2d 899, 905 (1971). Before addressing Johnson's argument, we examine briefly the legal principles which control our disposition of the issue.

 The right to a trial by jury in this jurisdiction derives from the United States Constitution or from applicable statutes.[16] *See Pernell v. Southall Realty*, 416 U.S. 363, 366, 369, 94 S.Ct. 1723, 1725, 1726, 40 L.Ed.2d 198 (1974); *see also Kudon, supra,* 547 A.2d at 978–79. The Seventh Amendment to the Constitution guarantees that right "[i]n suits at common law, where the value in controversy shall exceed twenty dollars." *See also* Super.Ct.Civ.R. 38(a).[17] The right to a jury trial extends not only to common-law forms of action, but also to subsequently created legal remedies in which legal, as distinguished from equitable, rights are at issue. *Pernell*, 416 U.S. at 374–75, 94 S.Ct. at 1729 (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830)); *E.R.B. v. J.H.F.*, 496 A.2d 607, 610–11 (D.C. 1985). "The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). We have stated the proposition simply to be that "where the issue in dispute is legal in nature a constitutional right to trial by jury attaches; where the issue, however, is equitable in nature there is no constitutional right to a jury trial." *E.R.B.*, 496 A.2d at 611; *see also Silverman, supra,* 147 U.S.App.D.C. at 61, 454 F.2d at 904.[18]

 In spite of the apparent clarity of these principles, the line between legal and

16. There is no statutory basis for the jury demand in suits for judicial foreclosure.

17. Super.Ct.Civ.R. 38(a) provides that

[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by an applicable statute shall be preserved to the parties inviolate.

18. In *Silverman,* the court looked to two Supreme Court cases which clarified the issue, *Dairy Queen, supra,* 369 U.S. at 472–73, 82 S.Ct. at 897, and *Beacon Theatres, supra,* 359 U.S. at

500–11, 79 S.Ct. at 948–57, and summarized its analysis of the cases on this point as follows:

Neither party is entitled to a jury trial of an issue which is equitable; both are entitled to a jury trial of an issue which is legal. Where in a single case there are factual issues *common* to both legal and equitable claims, either party has a constitutional right to a jury trial on the legal issue, and to have that issue resolved by a jury before the court determines the equitable issue.

*Silverman*, 147 U.S.App.D.C. at 61, 454 F.2d at 904.

equitable issues is sometimes difficult to draw in proceedings where legal and equitable claims and defenses are joined in a single case pursuant to current procedural rules.[19] To determine which issues may be jury triable in a case involving legal and equitable issues, we consider (1) the nature of the issue according to pre-merger custom, (2) the remedy sought, and (3) any practical limitations for jury resolution. *Ross, supra,* 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10; *E.R.B., supra,* 496 A.2d at 611; *Silverman, supra,* 147 U.S.App.D.C. at 61, 454 F.2d at 904.

■ We turn to consideration of the nature of the issues raised by the pleadings and the remedies sought. *See Silverman, supra,* 147 U.S.App.D.C. at 61, 454 F.2d at 904 (construction of pleadings are considered in ascertaining nature of issues) (citing *Dairy Queen, supra,* 369 U.S. at 476–79, 82 S.Ct. at 899–900).[20] In the amended complaint in this case, the Association sought judicial foreclosure to enforce its lien arising as a result of Johnson's failure to pay assessments accrued under the provision of the by-laws governing the operation of the condominium.[21] The Association set out in the amended complaint the accumulated assessments, late fees, and attorney's fees. Its only prayer for relief was that the court enter an order setting the foreclosure sale upon certain specified terms. A suit for judicial foreclosure to enforce a lien on real property is historically an equitable action. *See Plaza Corp. v. Alban Tractor Co.,* 219 Md. 570, 151 A.2d 170, 174 (1959);[22] *Jamaica Sav. Bank v. M.S. Investing Co.,* 274 N.Y. 215, 8 N.E.2d 493, 494 (1937). There is no constitutional right to a jury trial where the issues are equitable in nature. *E.R.B., supra,* 496 A.2d at 611; *Kaplan v. 2108–2116 Walton Ave. Realty Corp.,* 103 Misc.2d 223, 425 N.Y.S.2d 765, 766 (Sup.Ct.1980).

Central among the issues in a judicial foreclosure proceeding is whether the party is in default. *Kaplan, supra,* 425 N.Y.S.2d at 766. This issue is an equitable one which has been tried by the court in foreclosure actions from the earliest times. *Jamaica Sav. Bank, supra,* 8 N.E.2d at 495–96. Thus, we are unpersuaded, as the trial court was in this case, by Johnson's argument that a challenge to the amount owed was sufficient to raise a legal issue in a foreclosure action. As the trial court pointed out, if that were the case, every foreclosure proceeding would be considered legal in nature simply because the question of whether there has been a default in fact is an essential issue in the litigation.[23] Also asserted as a part of the sums forming the basis for the Association's request for foreclosure were attorney's fees and late fees. Attorney's fees have been recognized in this jurisdiction traditionally as more in the nature of an equitable issue instead of a legal one. *Kudon, supra,* 547 A.2d at 979.

19. Super.Ct.Civ.R. 18(a) provides that

[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or 3rd-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against the opposing party.

20. Johnson conceded in the trial court that a request for restoration of the property was an equitable remedy for consideration by the court. However, he maintained that the issue of damages resulting from the wrongful foreclosures was for the jury, which we address later in this opinion.

21. The Association alleged in the amended complaint that "the Association's By–Laws provide[] for the attachment of a lien for assessments levied against a unit, and for the foreclosure of such a lien by the Board of Directors." In *Johnson I,* Johnson had argued that the by-laws required foreclosure by suit, and the Association, relying on another provision, contended that it was authorized to proceed by legal means, including an expedited statutory power of sale. 548 A.2d at 92.

22. We may look to Maryland law on the point because the District of Columbia derives its common law from the state of Maryland. *See Hill v. Maryland Casualty Co.,* 620 A.2d 1336, 1337 n. 3 (D.C.1993); *Walker v. Independence Federal Sav. & Loan Ass'n,* 555 A.2d 1019, 1022 (D.C.1989).

23. We do not read the decision in *Silverman,* to dictate a contrary result insofar as it relates to the Association's foreclosure action in which no monetary relief was sought. In *Silverman,* the question arose in the context of a suit for possession following a foreclosure and a suit for damages for an alleged wrongful foreclosure. 147 U.S.App.D.C. at 63, 454 F.2d at 906. We discuss the latter point in connection with Johnson's counterclaim. Of course, we are not bound by the decision in *Silverman* under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

The late fees claimed in this case fall within that same category. *See id.; see also A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc.,* 553 F.Supp. 118, 124 (N.D.Ill.1982) (claim for costs and attorney's fees authorized by contract somewhat restitutionary in nature).

There are other reasons which weigh against Johnson's argument that the question of the amount due created a jury issue on the particular facts of this case. In answer to the amended complaint, Johnson actually admitted "as to having not personally paid [the] condominium assessments to [the Association]." Thus, there was no factual dispute surrounding the accumulation of the accrued charges or whether Johnson paid them. The apparent basis for Johnson's claim was that the assessments had been paid by someone else (the purchaser at the foreclosure sale) and that he himself had made payments into the court's Registry pursuant to court order. The proper allocation of any payments made during periods when Johnson occupied the premises to the exclusion of the purchasers at the earlier foreclosure sales and the calculation of credits for sums deposited in the Registry of the court are not dependent upon the resolution of any disputed factual issue requiring jury resolution, but rather upon determinations peculiarly within the province of the court in an equitable proceeding of foreclosure. *See Kaplan, supra,* 425 N.Y.S.2d at 766; *Jamaica Sav. Bank, supra,* 8 N.E.2d at 498.

■■■ Turning to the issues raised by Johnson's responsive pleading, we note that in defense of the action Johnson also requested that the court off-set any sums due the Association for any damages he recovered on the counterclaim.[24] His counterclaim requested compensatory and punitive damages for "mental anguish, legal fees and loss of the use of his property" arising out of the two earlier foreclosures by the Association under its claimed power of sale. Because he sought

to off-set any recovery on the counterclaim against any condominium assessments forming the basis for the judicial foreclosure action, Johnson contends that this created a common legal issue with the Association's foreclosure action, resulting in the issues being subject to a jury trial which could not be impaired by the prior determination by the court of the equitable claim. *See Beacon Theatres, supra,* 359 U.S. at 510, 79 S.Ct. at 956.

■■■ A suit for damages for wrongful foreclosure is traditionally an action at law for which a jury trial would be available. *Silverman, supra,* 147 U.S.App.D.C. at 62, 454 F.2d at 905; *see also Dairy Queen, supra,* 369 U.S. at 476, 82 S.Ct. at 899 (complaint for money judgment raises legal claim). Thus, a right to a jury trial would be preserved for a separate cause of action for wrongful foreclosure. *E.R.B., supra,* 496 A.2d at 611. Further, if there are factual issues common to both the legal and equitable claims, the parties have a right to a jury trial on the common issue. *Silverman, supra,* 147 U.S.App.D.C. at 61, 454 F.2d at 904 (citing *Dairy Queen, supra,* 369 U.S. at 472–73, 82 S.Ct. at 897).

■■■ Johnson asserted as grounds for liability on the counterclaim that the Association foreclosed twice in violation of the by-laws of the Association and the law of the District of Columbia. Based upon the contract documents, the trial court ruled that the Association had no authority to foreclose by power of sale. Therefore, the court set aside the two prior foreclosures. Johnson states in his brief that he does not challenge this aspect of the court's ruling on appeal. Therefore, we need not decide whether any part of these liability issues related to the claim should have been submitted to the jury before determination of the foreclosure action.[25]

---

24. Johnson asserted as the basis for the claimed set-off the "damages due [him] for wrongfully holding title to [Johnson's] unit without justification or cause." These claimed damages are related clearly to Johnson's counterclaim for wrongful foreclosure and not to the judicial foreclosure proceeding.

25. The Association does not challenge this ruling either. It contends that Johnson has elected his remedy to allow the foreclosures to be set aside, and therefore, he retains no right to recover damages arising out of the wrongful foreclosures. It has been recognized that where there has been a wrongful foreclosure, the property owner has

■ There was no other factual issue common to both claims, the resolution of which otherwise would bear upon Johnson's right to recover on his legal claim, and thereby require prior determination of the legal claims. *See Dairy Queen, supra*, 369 U.S. at 479, 82 S.Ct. at 900. Johnson's entitlement to damages, if any, is not dependent upon the outcome of the issues in the Association's foreclosure action.[26] His counterclaim, while related to his ownership interest in the same premises, in fact arises out of separate transactions involving those premises. It is an independent claim for recovery of damages to compensate Johnson for two prior alleged wrongful foreclosures which may be characterized as a set-off. A counterclaim for set-off "is a counter demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action." *Local 31, Nat'l Ass'n of Broadcast Employees and Technicians, (AFL–CIO) v. Timberlake*, 409 A.2d 629, 633 (D.C.1979) (citation and internal quotation marks omitted). This claim for set-off does not require jury consideration of the redemption amount in the foreclosure proceeding nor its recalculation after a jury trial on the damages claim.

■ A set-off is an equitable defense which can reduce or defeat the opposing party's claim. *Winchester Management Corp. v. Staten*, 361 A.2d 187, 192 n. 13 (D.C.1976) (citing 3 MOORE'S FEDERAL PRACTICE ¶ 13.02 note 2). Although unknown at common law, it was recognized early on in

equity. *Savings Bank of New London v. Santaniello*, 130 Conn. 206, 33 A.2d 126, 129 (1943). Since the nature of a set-off is equitable generally, its application after a determination of the claim and counterclaim are appropriately for the court rather than the jury. Even if damages were recovered by Johnson in his legal action for wrongful foreclosure, there would be no factual issues remaining for resolution, and the reduction of the redemption amount by the amount of any damage award could be calculated mathematically by the court. *Id.* 33 A.2d at 128. Thus, we reject Johnson's claim that the question of set-off created a jury issue common to the issues in the foreclosure action.

■ In his brief, in addition to a request for reversal of the order for judicial foreclosure, Johnson seeks remand for a jury trial only on the issue of damages. In Part IV of this opinion, we concluded that an action will lie for recovery of any damages sustained by a party as a result of the wrongful execution of a foreclosure in a manner contrary to the requirements of law. In the present posture of the case, Johnson is entitled to an award of any damages of the type recoverable incident to a set-aside action. For any meritorious claim of damages, Johnson is entitled to a jury trial.[27] *See Dairy Queen, supra*, 369 U.S. at 476, 82 S.Ct. at 899; *Eldredge, supra* note 27, 505 F.2d at 770.

two "alternative and inconsistent" remedies: to let the foreclosure stand and bring an action for damages for the wrongful foreclosure, a legal action, or to seek the equitable relief of restoration of the status quo ante by setting aside the foreclosure. *Silverman, supra*, 147 U.S.App.D.C. at 62, 454 F.2d at 905. The rules now permit a party to join these remedies in a single lawsuit, although double recovery is not permitted. *Id.* at 63, 454 F.2d at 906. Here, Johnson effectively opted for the latter remedy, and he was successful in that endeavor. He requested that relief as his first option, and he does not challenge on this appeal the grant of that equitable relief. Money damages may be awarded in an action to set aside a wrongful foreclosure, *Ballard, supra*, 64 App.D.C. at 62, 74 F.2d at 466, and to the extent that the claimant seeks such damages, a jury triable issue is presented. *Silverman*, 147 U.S.App.D.C. at 63, 454 F.2d at 906; *cf. Dairy Queen, supra*, 369 U.S. at 473, 82 S.Ct. at 897 (jury right exists although money damages "inci-

dental" to equitable relief). However, given Johnson's election to set aside the foreclosures, the jury trial right extends only to issues *common* to legal and equitable claims. *Silverman*, 147 U.S.App.D.C. at 61, 454 F.2d at 904. Hence, the damage issues here as to both type and quantum are necessarily limited to those awardable as incident to a set-aside action.

26. In his answer to the complaint Johnson admitted he had not paid the assessments.

27. See *supra* note 24. We find no error in the trial court's rejection of appellant's claim for punitive damages. *See Zanville v. Garza*, 561 A.2d 1000, 1002 (D.C.1989) ("[P]unitive damages are appropriately reserved only for tortious acts which are replete with malice.") The court can eliminate properly, as a matter of law, any meritless claims. *See Eldredge v. Gourley*, 505 F.2d 769, 770 (3d Cir.1974); *see also Silverman, supra*, 147 U.S.App.D.C. at 63, 454 F.2d at 906.

For the foregoing reasons, we conclude that appellant Johnson is entitled to a jury trial on his claim for the two prior wrongful foreclosures, and that the trial court erred in denying him a jury trial on that separate claim. Therefore, we reverse with instructions to the trial court to afford Johnson a jury trial on the issue of damages in connection with his counterclaim for wrongful foreclosure. In all other respects, the decision of the trial court is affirmed.

*Affirmed in part and reversed in part.*