**EAGLE WINE & LIQUOR CO. et al., Appellants,**

v.

**SILVERBERG ELECTRIC COMPANY, Appellee.**

No. 13051.

District of Columbia Court of Appeals.

Argued Sept. 14, 1978.

Decided May 2, 1979.

Brian J. Nash, Silver Spring, Md., for appellants.

William O. Lockwood, Beltsville, Md., for appellee.

Before NEWMAN, Chief Judge, and YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This is an appeal from (1) the trial court's denial of a motion by plaintiff-appellant Eagle Wine & Liquor Company (and seven subrogated insurance carriers, collectively referred to hereinafter as Eagle) for leave to amend their complaint, (2) the subsequent granting of defendant-appellee Silverberg Electric Company's motion for summary judgment, and (3) the denial of plaintiffs' motion for reconsideration of the court's earlier ruling on the proffered amendment. We conclude that the trial court did not err in denying leave to amend, and accordingly affirm.[1]

I

The dispute arose out of a fire which occurred on January 5, 1973, on Eagle's premises. The fire caused substantial property damage. Investigation at the time of, and shortly after, the incident indicated that the cause of the fire was electrical in nature, originating from a short circuit in a length of cable used to supply power to a baling machine. The baler had been sold to Eagle by Maren Engineering Company, and was installed in early June of 1972 by an electrician employed by appellee Silverberg. Eagle collected on its various insurance policies which were in effect at the time of the fire, thereby apparently recouping its property damage. The insurance carriers asserted their subrogation rights against both Maren and Silverberg, and Eagle and its insurers accordingly filed a complaint against those two companies on July 7, 1975.

---

1. Appellants recognize that if the motion for leave to amend the complaint was properly denied, their challenges to the related rulings fail.

The original complaint, filed two and one-half years after the fire, included two counts against Maren (breach of warranty for the sale, and negligence in the construction and assembly of the baler) and one count against Silverberg (negligence in failing to properly install the baler). The plaintiffs sought $100,000 in damages against each of the two defendants.

At the time of filing the complaint, the plaintiffs had not pinpointed the cause of the short circuit in the cable. The three counts in the complaint thus reflected the theories of recovery which seemed most plausible after preliminary investigation by fire department officials and appellants' experts. The underlying assumption was that a current overload had caused the short circuit, and certain theories were propounded. Maren, it was alleged, had breached a warranty that the baler would have built-in protection against current overload, and/or had been negligent in constructing the machine so as to permit an overload. In addition, the complaint alleged that Silverberg's negligence in installing and wiring the baler caused the overload. More specifically, plaintiffs alleged that Silverberg was negligent in failing to remedy an existing overload in the electrical system and/or in tampering with the electrical system inside the machine.

Interrogatories served by Eagle upon the two defendants reflected those theories. Silverberg's and Maren's answers to the complaint were filed on September 5 and December 16, 1975, respectively. Maren responded to Eagle's interrogatories on January 28, 1976, and Silverberg responded on February 23, 1976. From one of Silverberg's responses as to the specific size of the cable used in the installation of the machine, Eagle developed the theory that Silverberg had been negligent in using cable which was too small for the requisite current flow.

Trial had been set for June 17, 1976. However, during the preceding months, Eagle, upon further reflection and investigation, was abandoning its original theories in favor of several new ones, including the small wire theory. Thus Eagle delayed in responding to interrogatories which had been served by both defendants on February 11, 1976. On motion of defendant Maren, the court postponed the trial indefinitely while ordering Eagle to respond to the interrogatories.

In responding to Maren's interrogatories on August 2, 1976, Eagle indicated that it had no evidence to support the original theories of liability on Maren's part, but it asserted that its expert now believed that the installer—Silverberg—failed properly to affix an exposed portion of the cable to the wall as required by law. In addition, it was suggested for the first time that a defect in the cable itself was the cause of the short circuit and fire. Eagle deposed Silverberg's installing electrician in early October of 1976. Then, after four more months of consideration, Eagle came forward with a "walking" theory in a response filed February 16, 1977, to Silverberg's interrogatories. That is, Eagle now contended that the installer had failed to secure the baler properly to the surface on which it was placed, allowing it to move (or "walk") from vibration while in operation—thus creating tension, and eventually a crimp, in the connecting cable, ultimately causing the resultant short circuit.

Finally, Eagle's expert, at a deposition still six months later (on August 4, 1977), revealed that Eagle then was embracing the faulty cable theory which had been briefly considered a year before. It now appears that this, in fact, is the correct—or at least the most likely—theory. However, Eagle apparently recognized that under the original complaint recovery could not be had from Silverberg, for the latter had purchased the cable in question from a manufacturer, and the installing electrician could not reasonably have been expected to find the defect in the cable insulation. Thus it could not be said that Silverberg was liable for negligence.

Therefore, Eagle moved on August 6, 1977, for leave to amend its complaint to include a count for breach of express and implied warranties by Silverberg that the

wiring materials installed would be of merchantable quality, free from safety defects. The trial judge denied Eagle's motion after considering memoranda filed both in support and in opposition, and after hearing oral argument. The court cited Eagle's delays in moving the litigation forward, which it concluded were "substantially prejudicial" to Silverberg.

Following the denial, Eagle filed a praecipe dropping Maren as a defendant. Soon thereafter Silverberg filed a motion for summary judgment. In opposing Silverberg's motion, Eagle asked the court to reconsider its denial of leave to amend. This the court declined to do, and it granted Silverberg's motion for summary judgment.

Eagle appealed, claiming that the trial court abused its discretion in denying leave to amend. In its brief, as it had in its memorandum in support of the original motion, Eagle emphasizes that it has not been unduly dilatory, has exhibited no bad faith, and that the amendment was sought pretrial—indeed, before a trial date had even been set. Eagle further contends that Silverberg would not suffer any real prejudice were Eagle allowed to amend its complaint.

## II

Super.Ct.Civ.R. 15(a), governing amendments, states in pertinent part:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

This is identical to the federal rule, and we repeatedly have interpreted the local rule

consistent therewith. *Order of Ahepa v. Travel Consultants, Inc.,* D.C.App., 367 A.2d 119, 123–24 (1976); *Vasaio v. Campitelli,* D.C.App., 222 A.2d 710, 711–12 (1966); *G.M.P. Corp. v. H. A. Templeton Roofing Co.,* D.C.App., 190 A.2d 907, 908–09 (1963).

■ The proper test in reviewing an order denying leave to amend under the rule (either federal or D.C.) is whether the trial court has abused its discretion. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Order of Ahepa v. Travel Consultants, Inc., supra; Autocomp, Inc. v. Publishing Computer Service, Inc.,* D.C.App., 331 A.2d 338, 340 (1975); *Plummer v. Johnson,* D.C.Mun.App., 35 A.2d 647, 648 (1944). The discretion accorded the trial court in deciding a motion for leave to amend is to be considered together with the prevailing spirit of liberalism in allowing such amendments when justice will be so served. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[2] *See Foman v. Davis, supra.* In *Foman,* the Supreme Court, while reaffirming the trial court's discretion in these matters, held that leave to amend should be freely given

[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment . . .. [371 U.S. at 182, 83 S.Ct. at 230.]

*See also* 3 Moore's Federal Practice ¶ 15.-08[2] at 15–59–62 (2d ed. 1978).

■ To repeat, however, our review is limited to a search for an abuse of discretion. Even under liberal pleading rules, amendments are not to be granted automatically. A refusal to allow an amendment is to be upheld if predicated on some valid ground.[3] As we noted in *Plummer v. Johnson, supra,* at 648:

---

**2.** "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of plead-

ing is to facilitate a proper decision on the merits." 355 U.S. at 48, 78 S.Ct. at 103.

**3.** *See* 3 Moore's *supra,* ¶ 15.08[4] at 15–86–91, and note accompanying; *Saddler v. Safeway*

The question before us is not whether the amendment should have been allowed, but whether the court, in refusing to allow the amendment, abused its discretion.

In *Vasaio v. Campitelli, supra,* we elaborated on the discretion accorded trial courts in such matters:

> In the absence of manifest error, amounting to an abuse of that discretion, the decision of the trial court to grant or deny such motion is not reviewable on appeal. [222 A.2d at 711.]

■ This litigation has been marked from the beginning by long delays. Not until two and one-half years after the fire did Eagle file its original complaint. Then, two years after the initiation of the action, it sought the amendment here in question. It is apparent that Eagle was dilatory all through discovery, albeit somewhat understandably, while its investigation and theorizing as to the cause of the fire were proceeding. However, delay—even lengthy delay—by itself will not usually provide sufficient ground for refusal to allow an amendment. *Mercantile Trust Co. National Association v. Inland Marine Products Corp.,* 542 F.2d 1010, 1012 (8th Cir. 1976); *Penn Galvanizing Co. v. Lukens Steel Co.,* 65 F.R.D. 80 (E.D.Pa.1974). Refusals to grant amendments on the grounds of "lateness" or "delay" alone properly may be reversed. *See, e. g., Middle Atlantic Utilities Co. v. SMW Development Corp.,* 392 F.2d 380 (2d Cir. 1968). Here, moreover, the litigation was still in the pretrial stage.

■ Despite these considerations, and even in the absence of an outright showing of bad faith, the lateness of a motion may well provide the predicate for a proper determination that prejudice to the opposing party would result if an amendment were allowed. Such a determination may rest on findings that the moving party has not put forth any satisfactory reason for the delay (*e. g.,* new information which could not have been uncovered earlier) and that an "unduly delayed" amendment would mean a large additional expenditure of effort and money by the opposing party in discovery on a new aspect of the case after substantial discovery already has taken place. *See Komie v. Buehler Corp.,* 449 F.2d 644 (9th Cir. 1971); *Jamison v. McCurrie,* 388 F.Supp. 990 (N.D.Ill.1975), *aff'd on other grounds,* 565 F.2d 483 (7th Cir. 1977); *McPhail v. Bangor Punta Corp.,* 58 F.R.D. 638 (E.D.Wis.1973).

■ These were elements of the findings of the trial court in denying Eagle's motion for leave to amend. Although in cases such as this there may be some debate as to whether the opposing party actually did not already have sufficient notice of the subject matter of the proposed amendment, here the trial court's finding of prejudice was not erroneous. We cannot agree with Eagle's assertion that Silverberg would suffer no prejudice were the amendment allowed. Eagle quite properly emphasizes the limitation of the notion of "prejudice" in its citation to *Chamberlin v. United Engineers and Constructors, Inc.,* 194 F.Supp. 647 (E.D.Pa. 1961).[4] *See also Vasaio v. Campitelli, supra.* In this case, however, the trial court found that allowance of the amendment would work undue hardship—*i. e.,* unwarranted difficulties in defending the case—on Silverberg. We cannot say that this was an improper application of the notion of prejudice. *See, e. g., Poloron Products v. Lybrand Ross Bros. & Montgomery,* 72 F.R.D. 556 (S.D.N.Y.1976). Moreover, there certainly is a sufficient basis for the finding of prejudice by the trial court. There was a wastage of effort (and money) by Silverberg on discovery, as a result of Eagle's

Stores, Inc., D.C.App., 227 A.2d 394 (1967). *Compare Hagans v. Hagans,* D.C.App., 215 A.2d 842 (1966).

4. The court in that case correctly stated:

> A plaintiff is not precluded from amending a faulty complaint so that it states a claim upon which relief can be granted simply because by so amending, the defendant may thereby be subsequently made liable to the plaintiff. There is no rule of law which freezes the further development of the case within the limits of plaintiff's knowledge when the complaint was filed. [194 F.Supp. at 649.]

rather leisurely approach to building its case. It is reasonable to conclude that the delay was essentially of Eagle's own doing, and was not occasioned by the need to engage the other side in discovery. The trial court found that, under the circumstances, it would be unfair to subject Silverberg to a new theory of liability requiring a new round of discovery.

The trial court also found prejudice to Silverberg in the prospect of facing an action under a newly-proposed faulty cable theory at a late date, given that it would be virtually impossible for Silverberg now to identify the manufacturer of the cable in order to seek to pass liability on to the responsible party. Eagle contends that in fact the manufacturer of the cable could not have been ascertained even immediately after the installation of the baler. We decline, however, to second-guess the trial court as to the significance of the delay occasioned by Eagle in prejudicing Silverberg in this respect.

Finally, there is another element of prejudice which was alluded to only indirectly by the trial court. The court cited probable prejudice to the third-party manufacturer of the cable if that manufacturer could be identified and joined in the action at such a late date. More likely it seems, is the prospect that the manufacturer, once identified, now would be immune from liability under the statute of limitations.[5] *See* D.C.Code 1973, § 12–301; *see also Perez v. Chutick & Sudakoff*, 50 F.R.D. 1 (S.D.N.Y.1970). The substantial prejudice to Silverberg under such a scenario is obvious.

Considering all of the circumstances, it cannot accurately be said that the trial court relied merely on a "bald allegation of prejudice" by Silverberg, as appellants contend. Eagle calls our attention to the decision in *Foman v. Davis, supra,* in which the Supreme Court reversed a denial of a motion to amend because of "the absence of any apparent or declared reason" supporting the trial court's ruling. 371 U.S. at 182, 83 S.Ct. at 230. This case is quite different.

In sum, we conclude that despite the liberal spirit of amendment of pleadings embodied in Super.Ct.Civ.R. 15(a), the trial court did not abuse its discretion in denying leave to amend under the circumstances presented by this case. Accordingly, the denial of appellant's motion for leave to amend and the rulings related thereto are affirmed.

*Affirmed.*

---

5. This is assuming arguendo that the faulty cable theory would be eligible for "relation back" and thus timely under the "same occurrence" test associated with Super.Ct.Civ.R. 15(c), which provides in pertinent part:

Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transportation, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
*See generally* 3 Moore's *supra,* ¶ 15.15[1] *et seq.*