Garnett PANNELL, Appellant

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 00–CV–1591.

District of Columbia Court of Appeals.

Argued March 21, 2002.

Decided July 31, 2003.

Mark D. Meyer, Crofton, MD, for appellant. Robert J. Zakroff, Bethesda, MD, was on the brief for appellant.

Mary T. Connelly, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, were on the brief, for appellee.

Before TERRY, STEADMAN, and FARRELL, Associate Judges.

TERRY, Associate Judge:

Appellant Pannell sued the District of Columbia, seeking damages for injuries which he allegedly sustained while he was a prisoner in the custody of the District of Columbia Department of Corrections. The trial court denied two motions by appellant for leave to amend his complaint and later granted the District's motion for summary judgment. From that order Pannell noted this appeal. We affirm.

I

On September 21, 1994, appellant was in the custody of the District of Columbia, awaiting an appearance before the Superior Court, when he was allegedly assaulted and sustained injuries. Nearly three years later, in May 1997, appellant filed a one-count complaint against the District of Columbia alleging negligent supervision. In his complaint appellant stated:

> That the Plaintiff, while under the control and custody of the Defendant District of Columbia in the holding cell, was severely beaten and physically and sexually abused by other individuals

within the care, custody, control and/or supervision of the Defendant District of Columbia.

\* \* \* \* \* \*

That the agents, servants, and/or employees of the District of Columbia breached [their] duties when they failed to: keep the Plaintiff in a reasonably safe environment; take reasonable steps to ensure the Plaintiff's physical and psychological safety as against others similarly under Defendant's supervision and control; take adequate measures to supervise others within and without the holding cell to ensure that they did not physically and/or sexually attack the Plaintiff and cause him injury.

About nine months later, during a deposition taken on February 11, 1998, appellant stated that he had been abused by police officers in addition to the other prisoners in the holding cell.[1] More than sixteen months after that, on June 25, 1999, appellant moved for leave to amend his complaint by adding a count related to the alleged assault by police officers. The court denied appellant's motion because there had been too great a delay (more than two years) between the filing of the complaint and the filing of the motion for leave to amend.

On September 2, 1999, the District of Columbia took the deposition of appellant's standard-of-care expert, Thomas Rosazza. Some time later, the District filed a motion *in limine* to exclude Mr. Rosazza's testimony. The court granted the motion in part as to Rosazza's proposed testimony about the standards of care related to excessive force by the police, negligent training of police officers, and negligent supervision of police officers, ruling that such testimony would be irrelevant at trial, given the allegations set forth in the complaint. The court also held that the complaint could be fairly read only to mean that the negligent supervision count was aimed at the supervision of other prisoners and not at the District's supervision of its own police officers, wardens, or custodians. The case was then reassigned in the ordinary course to a different judge.

On January 6, 2000, appellant filed another motion to amend the complaint. In this second motion, appellant sought to add an additional negligent supervision count aimed at the District's supervision of its police officers, wardens, or custodians. The second judge denied this motion as well, stating that the first judge's order denying the first motion to amend remained the law of the case, absent any new law or new facts shown by appellant. The judge also said that appellant should have been aware of the facts underlying his allegation of police involvement much earlier, even before he originally filed his complaint. Finally, the judge noted that appellant had still failed to explain the delay between the date of his deposition, when he described the beating by police, and the filing of the first motion to amend the complaint.

On August 1, 2000, the District filed a renewed motion for summary judgment,[2] arguing that appellant had failed to designate an expert who could testify about a national standard of care concerning the duty to supervise other prisoners and to maintain a safe environment. Agreeing

---

1. The location of this "holding cell" is not clear from the record, but it was apparently either in a police station or in the central cell block at police headquarters. For the purposes of this appeal, it does not matter.

2. The court had denied the District's earlier motion for summary judgment, for reasons not entirely clear from the limited record before us. The motion itself is not in the record.

with the District that appellant could not prove an essential element of his case, the court granted the motion for summary judgment.

## II

Appellant's first claim of error is that the trial court erred in denying his two motions to amend the complaint. Leave to amend a complaint after the filing of responsive pleadings (as in this case) is a matter within the discretion of the trial court. *See Crowley v. North American Telecommunications Ass'n,* 691 A.2d 1169, 1174 (D.C.1997); *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 641 A.2d 495, 501 (D.C.1994); Super. Ct. Civil Rule 15(a). However, the policy that favors resolution of disputes on the merits creates a "virtual presumption" that leave to amend should be granted unless there are sound reasons for denying it. *See Johnson,* 641 A.2d at 501. Factors affecting the court's discretion include: "(1) the number of requests to amend; (2) the length of time that the case has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the non-moving party." *Crowley,* 691 A.2d at 1174. The lateness of a motion for leave to amend, however, may justify its denial if the moving party fails to state satisfactory reasons for the tardy filing and if the granting of the motion would require new or additional discovery. *Eagle Wine & Liquor Co. v. Silverberg Electric Co.,* 402 A.2d 31, 35 (D.C.1979).

In the case at bar, appellant filed his first motion for leave to amend the complaint three days before the trial was originally scheduled to begin, and more than two years after the complaint was initially filed. He sought to add a new count based on facts known to him *at least*

*one year* before he filed the motion. By that time discovery was closed, and the parties were prepared for trial on the single claim that the District had been negligent in its supervision of the prisoners in the holding cell.

The trial court denied the first motion after a hearing on June 28, 1999. The court granted a continuance at that hearing, but only for the purpose of designating an expert witness who could testify about the standard of care for supervising prisoners in custody. Given the lateness of the motion for leave to amend and appellant's desire to amend the complaint with a count for which there had been no discovery, we hold that the court acted well within its discretion when it denied appellant's first motion for leave to amend the complaint. *Eagle Wine,* 402 A.2d at 35.

A little more than six months later, appellant filed his second motion for leave to amend the complaint. In that motion he sought to add an assault and battery count and to amend the original negligent supervision count to include an allegation that police officers, as well as prisoners, had assaulted him in the holding cell. The court again denied the motion, ruling that its initial order denying leave to amend was the law of the case and that appellant had failed to offer any new law or new facts that would warrant reconsideration of the June 28 order.

"The 'law of the case' doctrine bars a trial court from reconsidering the same question of law that was presented to and decided by another [judge] of coordinate jurisdiction ...." *Tompkins v. Washington Hospital Center,* 433 A.2d 1093, 1098 (D.C.1981). "The analysis focuses on whether the question initially decided is substantially the same as the issue being presented and whether the court's first

ruling was deemed to be final." *Gordon v. Raven Systems & Research, Inc.*, 462 A.2d 10, 12 (D.C.1983) (citing *Tompkins*). The doctrine applies "when (1) the motion under consideration is substantially similar to the one already raised before, and considered by, the first court; (2) the first court's ruling is sufficiently final; and (3) the prior ruling is not clearly erroneous in light of newly presented facts or a change in substantive law." *P.P.P. Productions, Inc. v. W & L, Inc.*, 418 A.2d 151, 152 (D.C.1980) (citation and internal quotation marks omitted).

Appellant argues that his second motion to amend was intended merely to "clarify" the negligent supervision count in his original complaint. He also contends that this count was meant to encompass claims for both negligent supervision of the prisoners and negligent supervision of the police officers at the holding cell. Further, appellant maintains that he was taken by surprise when he first learned on December 6, 1999, that the court was construing the complaint to aver only negligent supervision of prisoners and not negligent supervision of police officers. To support this assertion, appellant relies on a contorted reading of the complaint's allegation that the District failed to "take adequate measures to supervise others *within and without* the holding cell to ensure that they did not physically and/or sexually attack the Plaintiff and cause him injury" (emphasis added). Appellant argues that this language clearly identifies both the prisoners "within" the holding cell and the police officers who were allegedly "without" the holding cell. We cannot agree.

Reading this portion of the complaint in context and considering the complaint as a whole, the trial court could reasonably construe the allegations regarding the attack as referring only to other prisoners in the holding cell, not to police officers or wardens. Indeed, appellant's reading of the "within and without" language is difficult to reconcile with the phrase earlier in the same paragraph which states that the District failed to "take reasonable steps to ensure the Plaintiff's physical and psychological safety *as against others similarly under [the District's] supervision*" (emphasis added). The latter phrase undermines appellant's interpretation because it more closely identifies the alleged attackers as others *similarly* under the District's supervision, which in context can only mean other prisoners in the holding cell. Consequently, we can find no error in the trial court's interpretation of the complaint, *see Scott v. District of Columbia*, 493 A.2d 319, 323 (D.C.1985) ("It is not error ... for a trial judge to limit his consideration to issues unequivocally raised by the complaint" (citations omitted)), and no abuse of discretion in the denial of the renewed motion to amend.

### III

Finally, appellant maintains that the trial court improperly granted summary judgment to the District.[3] Summary judgment is proper when a party fails to establish an essential element of his case upon which he bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

**3.** Appellant also contends that the court erred by granting, in part, the District's motion *in limine* concerning expert testimony. We need not address this contention in light of our holding that the motions for leave to amend were properly denied and that summary judgment was properly granted. The order granting the motion *in limine* excluded testimony only about the standard of care for the claims which the court refused to allow appellant to add to his complaint by amendment; the excluded testimony was not relevant to the unamended claim, on which summary judgment was granted.

(1986). In a negligence action, the plaintiff bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury. *E.g., Messina v. District of Columbia,* 663 A.2d 535, 537 (D.C.1995); *Toy v. District of Columbia,* 549 A.2d 1, 6 (D.C.1988). The trial court held, and we agree, that appellant's proof on the first issue was insufficient to withstand the District's summary judgment motion.

 This court has "repeatedly held that the standard of care owed by the District of Columbia to persons in its custody is a matter beyond the ken of the average juror that requires expert testimony." *Clark v. District of Columbia,* 708 A.2d 632, 634 (D.C.1997) (citations omitted); *accord, e.g., District of Columbia v. Moreno,* 647 A.2d 396, 398–399 (D.C.1994); *District of Columbia v. Carmichael,* 577 A.2d 312, 314 (D.C.1990) (in a case involving alleged assault on two prisoners by several fellow prisoners, "expert testimony was essential"); *Toy,* 549 A.2d at 7. "Where, as in this case, the plaintiff must depend on expert testimony, it is not sufficient for the expert to explain what he or she would have done under similar circumstances, or to declare that the District violated the national standard of care." *Phillips v. District of Columbia,* 714 A.2d 768, 773 (D.C.1998) (citation omitted). "On the contrary, 'the expert must clearly articulate and refer to a standard of care by which the defendant's actions can be measured.'" *Id.* (citing *Clark,* 708 A.2d at 635).

The court in this case granted summary judgment upon learning that appellant's expert witness could not offer an expert opinion about the standard of care that the District allegedly breached. Thomas Rosazza testified under oath in two deposi-

tions, but he failed to offer any support for his conclusion that the District violated a national standard of care to supervise the prisoners in its custody and to keep them in a reasonably safe environment. In his first deposition on September 11, 1999, Rosazza testified as follows:

Q. Okay, Mr. Rosazza, as I understand your opinions, all your conclusions and opinions seem to concern actions of officers who are in charge of Mr. Pannell.

A. Yes.

Q. Do you have any opinion concerning whether the officers met the national standard of care with respect to supervision of other prisoners?

A. No.

\* \* \* \* \* \*

Q. Okay. Do you have any opinion as to whether the officers at the jail met the national standard of care with respect to keeping the plaintiff and other inmates in a relatively safe environment?

A. No.

\* \* \* \* \* \*

Q. Do you have any opinion as to whether the officers at the jail where Mr. Pannell was maintained met the national standard of care with respect to insuring plaintiff's physical and psychological safety as against other prisoners?

A. No.

Later, at a second videotaped deposition *de bene esse,* Rosazza could only state generalized duties (*e.g.,* "the ultimate duty is to protect"; duty is "to separate the prisoners ... to provide for a safe environment") and offer his own conclusory opinion "that the standard of care was violated." Although Mr. Rosazza testified that the District violated the national standard of care, he never said what that standard was. He did refer once to a

document entitled "Standards for Law Enforcement Agencies," but he did not mention any particular standard that might be found in that document.

Thus we hold that the proffered testimony of Mr. Rosazza was insufficient to prove a national standard of care. *See Phillips*, 714 A.2d at 773 (reference to American Correctional Association (ACA) standards was insufficient when no specific standard was identified; "the expert must testify as to *specific* ACA standards ... and must relate them to the defendant's conduct" (emphasis in original) (citing *Moreno*, 647 A.2d at 401)); *Clark*, 708 A.2d at 635 n. 3 (passing reference to an ACA standard not sufficient). Without this necessary expert testimony, appellant could not prove an essential element of his claim, and therefore the trial court properly granted summary judgment to the District.

### IV

We find no abuse of discretion in the denial of appellant's belated motions for leave to amend his complaint, and we hold that the District's motion for summary judgment was properly granted. That judgment is accordingly

*Affirmed.*