*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CV-0781

ALEXANDER ZAJAC, APPELLANT,

V.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2023-CAB-001468)

(Hon. Robert R. Rigsby, Trial Judge)

(Argued September 19, 2024                    Decided November 13, 2025)

*Alexander Zajac*, pro se.

*Trina Fairley Barlow*, with whom *Cori B. Schreider* was on the brief, for appellee.

Before DEAHL and HOWARD, *Associate Judges*, and CROWELL, *Associate Judge*, Superior Court of the District of Columbia.[*]

HOWARD, *Associate Judge*: Appellant Alexander Zajac challenges the trial

court's orders dismissing his complaint for failure to state a claim and denying his

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a).

motion for leave to amend the original complaint. Mr. Zajac, appearing pro se, stated at oral argument that his original complaint was vague, and thus conceded that the trial court's dismissal of his original complaint was proper. We therefore affirm the trial court's dismissal of the original complaint. However, Mr. Zajac maintained that the trial court abused its discretion in denying his motion for leave to file an amended complaint on the basis that it contradicted his original complaint and suffered from the same legal infirmities as the original. We agree and reverse and remand to the trial court for further proceedings consistent with this opinion.

## I.     Background

Taking the allegations in the underlying complaints as true, the facts are as follows. Mr. Zajac was formerly employed by Appellee Finnegan, Henderson, Farabow, Garrett & Dunner, LLP (Finnegan) from August 15, 2016, through March 31, 2020. Mr. Zajac began his employment for Finnegan as a "Student Associate," and he held this position until he became an "Associate Attorney" (Associate) in March 2019. Attached to the complaint was a copy of the 2016 letter offering him the Student Associate position.

This offer letter contained numerous details regarding Mr. Zajac's condition of employment. In relevant part the conditions of the offer letter included: (1) annual salary of $100,000; (2) eligibility "for [Finnegan's] bonus plan;" (3) the expectation

to "meet all of [Finnegan's] performance expectations in order to become eligible for a discretionary merit bonus;" (4) Finnegan's ability, "within its discretion," to award productivity bonuses to Student Associates; and (5) Finnegan's policy for reimbursing 100% of tuition expenses on a semester by semester basis upon two conditions: (i) that reimbursement would be provided only "for credits in which a grade of B or above is received" and (ii) only if Mr. Zajac received "satisfactory performance reviews" and remained in "good standing." The offer letter indicated that it did "not constitute a contract of employment."

Mr. Zajac accepted Finnegan's offer of employment as a Student Associate with the above conditions. In March 2018, Mr. Zajac was offered employment as an Associate upon successful completion of law school. Mr. Zajac was then promoted from Student Associate to Associate in March 2019 after sitting for the Maryland bar exam. According to Mr. Zajac, Associates were required to bill 2000 hours annually and "[i]t was understood throughout the firm that 100 hours over the requirement resulted in a 10% productivity bonus, that 200 hours over the requirement resulted in a 20% productivity bonus, and that 300 hours over the requirement resulted in a 25% productivity bonus." At the end of fiscal year 2019, Mr. Zajac billed over 2200 hours but did not receive a productivity bonus.

As to his tuition reimbursement, Mr. Zajac's 2016 offer letter stated that Student Associates would be reimbursed for "tuition costs for credits in which a grade of B or above is received," provided that the Student Associate was receiving satisfactory performance reviews and was an employee in good standing. The letter explained that if the conditions were met, Finnegan would "reimburse you for 100% of the tuition expenses incurred on a semester by semester basis" from Fall 2016 through Spring 2018, but "may, at its sole discretion, adjust the reimbursement rate." Mr. Zajac claimed he received "pre-tax" reimbursement and asserted that "[b]ased on customary business practice, '100%' reimbursement means tuition expenses are covered post-tax." As a consequence, Zajac alleged he "lost no less than $33,789.14 in tuition reimbursement."

Appellant's employment ended on March 31, 2020. In March 2023, after proceeding through various unfruitful administrative processes, Mr. Zajac filed a complaint alleging two counts of wage theft under the D.C. Wage Payment and Collection Law (DCWPCL), one count concerning a productivity bonus, and the other count concerning tuition reimbursement. Finnegan filed a motion to dismiss, arguing that, per the 2016 offer, the funds were discretionary and did not qualify as "wages" under the DCWPCL. In his opposition, Mr. Zajac suggested that he could plead additional facts that would defeat the motion, though he did not attach an amended complaint. Mr. Zajac asserted that productivity bonuses were mandatory

for Associate Attorneys, and the bonus "was mentioned in Plaintiff's offer letter for conversion to a full [A]ssociate" without any "qualification as discretionary," though he claimed Finnegan later destroyed his copy of this letter. Finnegan filed a reply with the putative 2018 Associate Attorney offer letter ("2018 offer") attached as an exhibit; the letter stated that it could award productivity bonuses "within its discretion."

The trial court agreed with Finnegan's reasoning that the productivity bonus was discretionary, thus not qualifying as a wage under the DCWPCL and granted the motion to dismiss. The trial court dismissed the tuition reimbursement claim finding that "expense reimbursements" do not constitute wages. The trial court stated, however, that it would permit Mr. Zajac to file a motion for leave to amend his complaint. In August 2023, Mr. Zajac filed his motion for leave to amend along with the proposed amended complaint.

The proposed amended complaint acknowledged that the 2016 offer expressly stated that it was not a contract but asserted that Mr. Zajac had additionally received oral promises of mandatory performance bonuses from individuals with the authority to bind the firm and, moreover, that such bonuses were standard practice. Mr. Zajac also claimed that Finnegan's agents promised that he would receive post-tax tuition reimbursement. He reiterated his claim that post-tax reimbursement was the

"customary business practice" at other law firms and stated that the 2016 offer left "no discretion for tuition benefits."

Finnegan argued the motion for leave to amend should be denied, asserting that the proposed amended complaint contradicted the original complaint because, in its view, the original complaint asserted that the 2016 offer was a binding contract while the amended complaint relied on oral promises and insisted that the offer letters were not binding. The trial court denied Mr. Zajac's motion for leave, concluding that the proposed amended complaint contradicted the original complaint, and that denial was warranted on that basis. The trial court noted, in any event, that the proposed amended complaint did not cure the defects in the original complaint. This timely appeal followed.

## II.    Discussion

Mr. Zajac abandoned his challenge to the dismissal of the original complaint at oral argument. We therefore dispense with unnecessary discussion of that point and affirm the original dismissal. However, the trial court's reasoning and the parties' arguments regarding the dismissal remain relevant to Mr. Zajac's second challenge: that the trial court abused its discretion in denying him leave to amend his complaint. We agree.

The trial court articulated two bases for denying Mr. Zajac leave to amend. First, it applied federal precedent and indicated that Mr. Zajac's amended complaint was contradictory to his original. Second, and alternatively, the trial court concluded that amending the complaint would be futile, because it would still suffer from the same deficiencies as the original complaint—that is to say that Mr. Zajac still had not adequately alleged that either the productivity bonus or the law school tuition reimbursement were wages under the DCWPCL because of their discretionary nature. Today, we hold first that the trial court abused its discretion by applying an inappropriate standard when it determined that leave to amend should not have been granted because the amended complaint contradicted the original. Next, applying de novo review, we hold that the motion for leave to amend was not futile because Mr. Zajac stated plausible claims of wage theft under the DCWPCL in his amended complaint based on the productivity bonus and tuition reimbursement. We address each in turn.[1]

---

[1] Finnegan, in one line of its brief, raises for the first time that Mr. Zajac's claim is barred by the statute of limitations. However, this argument was not briefed any further, argued below, nor raised at oral argument. We have held that "issues not raised in the trial court will not be considered on appeal." *Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 302 (D.C. 2006); *Hollins v. Fed. Nat'l Mortg. Ass'n*, 760 A.2d 563, 574 (D.C. 2000) ("we ordinarily do not consider issues raised for the first time on appeal"). Thus, we will not consider this issue here as it was not raised below nor passed on by the trial court.

### A. The Trial Court Abused its Discretion by Applying an Inappropriate Standard to Deny Leave to Amend Based on Contradictions Between the Complaints

This court reviews the denial of a motion to file an amended complaint for abuse of discretion. *See Nat'l Ass'n of Postmasters of U.S. v. Hyatt Regency Wash.*, 894 A.2d 471, 477-78 (D.C. 2006). The trial court's exercise of discretion in granting or denying a motion for leave to amend will not be disturbed absent an abuse of discretion. *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 501 (D.C. 1994). "[P]olicy favor[s] resolution of cases on the merits," thus "creat[ing] a virtual presumption that a court should grant leave to amend where no good reason appears to the contrary." *Bennett v. Fun & Fitness of Silver Hill, Inc.*, 434 A.2d 476, 478 (D.C. 1981) (internal quotations omitted).

The trial court denied Mr. Zajac leave to amend, first citing to our precedent, *Miller-McGee v. Washington Hosp. Ctr.*, to establish that "leave to amend should be given freely in the absence of . . . reason for not permitting amendment." 920 A.2d 430, 436 (D.C. 2007) (internal quotations omitted). It quoted further, "[r]easons that may justify denying leave to amend are 'undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies [and] futility of amendment.'" *Id.* From there the trial court cited federal authorities to justify looking back to the original complaint. *See W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt.*

*Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001). Then it went on to cite *Hourani v. Alexander V. Mirtchev & Krull Corp.* as support for the proposition that a party "may not plead facts in their amended complaint that contradict those in their original complaint." 943 F. Supp. 2d 159, 171 (D.D.C. 2013).

Mr. Zajac argues the trial court erred in denying the leave to amend because the trial court "avoid[ed] any substantive analysis of [his] allegations" in his proposed amended complaint. Finnegan argues, in turn, that Mr. Zajac's "alleged facts contradicted those in the original Complaint" and thus warranted denial of leave to amend. While the presence of alleged contradictions is relevant to the trial court's analysis of a motion for leave to amend, Mr. Zajac is correct in arguing that, under our precedent, the trial court was obligated to conduct a fuller analysis here than it did.

"In reviewing for abuse of discretion, we must determine whether the decision maker failed to consider a relevant factor, whether the decision maker relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *District of Columbia v. Facebook, Inc.*, 340 A.3d 1, 10 (D.C. 2025) (quoting *Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024)). Our precedent has established that several factors guide the determination of whether a motion to amend should be granted. These factors include: "(1) the number of requests to

amend; (2) the length of time that the trial has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the non-moving party." *Johnson*, 641 A.2d at 501. A key concern for our court in assessing these factors is "whether the party seeking amendment is abusing the court system." *Bare v. Rainforest All., Inc.*, 336 A.3d 619, 627 (D.C. 2025).

Here, the trial court did not consider the factors collectively. It focused on points arguably going toward factors three and four only. First, the trial court briefly mentioned "undue delay, bad faith, dilatory motive, [and] repeated failure to cure deficiencies" as reasons for denying leave to amend. It focused on alleged contradictions between the original and amended complaints, relying on a non-binding district court case, *Hourani*, as support. We believe the trial court abused its discretion by improperly relying on *Hourani* and failing to consider additional relevant factors.[2]

To be sure, while we have not endorsed the line of thinking in cases like *Hourani*, contradictions in a complaint have independent relevance on principles of

---

[2] While we are inclined to think that the above five factors weigh in favor of granting Mr. Zajac's motion for leave to amend, we are "[m]indful that we are a court of review, not of first view," so we leave it to the court below to apply the relevant factors in the first instance. *Facebook, Inc.*, 340 A.3d at 10.

estoppel. *See, e.g., Porter v. Howard Univ.*, 317 A.3d 342, 347 (D.C. 2024) ("The Supreme Court has recognized that judicial estoppel is a doctrine whose 'purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001))); *Dennis v. Jackson,* 258 A.3d 860, 862 (D.C. 2021) (describing more specifically the principle that judicial estoppel prevents parties from taking contradictory positions in litigation); *Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 26 (D.D.C. 2015) ("The court does have the authority to strike obviously 'false and sham' allegations that have changed from the complaint to the amended complaint.").

If we were to apply *Hourani* in this case, we remain unconvinced that we would reach a different result because the contradictions must be fundamental and change the nature of the causes of action. The court in *Hourani*, following the language quoted by the trial court, goes on to clarify in language more reflective of estoppel principles that contradictions become an issue when the "plaintiff *blatantly* changes" their facts of the case, thus "*directly* contradict[ing] the facts set forth in [plaintiff's] original complaint." 943 F. Supp. 2d at 171 (emphasis added). A later case from the District Court limited *Hourani* further, explaining that the contradictions the courts are concerned with are fundamental contradictions, such as

"180 degree change[s] in the allegations," that foundationally change the nature of the plaintiff's allegations. *Clay*, 128 F. Supp. at 27.

As we read Mr. Zajac's amended complaint, we do not see direct, fundamental contradictions that would indicate bad faith. It appears that Mr. Zajac, in his amended complaint, attempted to fill holes in the original complaint identified by the trial court, not that he sought to fabricate contradictory assertions as was suggested at oral argument. For example, Finnegan points out that Mr. Zajac's original complaint distinguishes between merit and productivity bonuses, but the amended complaint then alleges an oral promise of mandatory productivity bonuses. The oral promise allegation in the amended complaint does not contradict any statement made in the original complaint, it provides additional detail that supports Mr. Zajac's claim without creating a "180 degree change." *Id.* The same can be said for the allegations of oral promises that were added in the amended complaint regarding the productivity bonuses upon Mr. Zajac's conversion to an Associate. This is the purpose of amending a complaint: Mr. Zajac realized that his original complaint was deficient in various ways and requested leave to amend. This does not indicate bad faith or abuse of our court system, nor does it foundationally change the nature of Mr. Zajac's allegations. Therefore, we cannot say that the court's reliance on the alleged contradictions in the amended complaint as the primary reason for denial, without considering other factors, was reasonable.

Based on the above, we conclude that the trial court abused its discretion. We therefore reverse and remand for the trial court to consider the motion for leave to amend in light of the non-exhaustive list of factors set forth in *Johnson*.

**B.     Amending the Complaint Would Not be Futile Because, as Amended, It States Plausible Claims of Wage Theft for the Productivity Bonus and Law School Tuition Reimbursement.**

The trial court also concluded as a basis for denying Mr. Zajac leave to amend that his amended complaint suffered from the same legal deficiencies that caused it to grant dismissal on the original complaint, thus rendering amendment futile. In addition to "abusing the court system," the other concern for our court when reviewing a motion for leave to amend is "whether amendment would be futile." *See Bare*, 336 A.3d at 627. Futility on its own is a sufficient basis to justify denial of leave to amend. *Farris v. District of Columbia*, 257 A.3d 509, 517 (D.C. 2021). "An amendment is futile if it fails as a matter of law to state a claim upon which relief can be granted." *Id.*

Mr. Zajac's amended complaint, as we have described, alleges two counts of wage theft, one regarding a productivity bonus and the other regarding tuition reimbursement. A claim for wage theft must allege: (1) the complainant was an employee of the employer, (2) who performed work for the employer, (3) was not compensated or timely compensated for such work, and (4) the measure of damages

due to the employee. *District of Columbia v. Bongam*, 271 A.3d 1154, 1162 (D.C. 2022) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). Further, it must be determined whether the disputed funds qualify as wages under the DCWPCL. The DCWPCL defines wages as:

> (A) Bonus; (B) Commission; (C) Fringe benefits paid in cash; (D) Overtime premium; and (E) Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; (ii) Pursuant to a contract between an employer and another person or entity; or (iii) Pursuant to District or federal law.

D.C. Code § 32-1301(3).

The trial court's relevant reasoning, articulated in its dismissal of the original complaint, was that neither of Mr. Zajac's alleged counts of wage theft could survive as a matter of law because neither were wages under the DCWPCL. First, the productivity bonus was "discretionary," and second, the tuition reimbursement was conditional and tethered to actual expenses incurred. Mr. Zajac argues the amended complaint alleges "multiple facts showing that mandatory productivity bonuses were orally promised," which he argues satisfies the DCWPCL. Similarly, Mr. Zajac alleges the amended complaint "includes multiple facts showing that full tuition

benefits were promised to Appellant both in writing and orally."[3]  Finnegan argues the productivity bonus was "discretionary" and the tuition reimbursement "conditional," so neither are wages under the DCWPCL.

Looking to the standard of review, we have traditionally articulated that denial of a motion or request for leave to amend is governed by the abuse of discretion standard.  *See Nat'l Ass'n of Postmasters of U.S.*, 894 A.2d at 477-78.  However, a denial of leave to amend on the basis of futility necessarily implicates a review of whether the claims would survive a motion to dismiss—a review we conduct de novo.  Further, given the similarity between our prior treatment of denials of leave to amend for futility and motions to dismiss, this court appears to have effectively applied a de novo standard of review for futility denials in the past.  *See, e.g., Rayner v. Yale Steam Laundry Condo. Ass'n*, 289 A.3d 387, 402 (D.C. 2023) (concluding that the appellant's "proposed amendments fail to overcome the same hurdles that merited dismissing [appellant's] claims under Rule 12(b)(6)"); *Farris,* 257 A.3d at

---

[3] Alternatively, Mr. Zajac, for the first time on appeal, raises a breach of contract claim regarding the productivity bonus and tuition reimbursement.  "In general, parties may not assert one theory at trial and another on appeal." *Clark v. United States*, 51 A.3d 1266, 1271 (D.C. 2012) (quoting *Cowan v. United States*, 629 A.2d 496, 503 (D.C.1993)).  These new theories will not be heard by the appellate court absent "exceptional" circumstances. *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C. 1993).  This new theory of liability was never pled at the trial level, and there are no exceptional circumstances present.  Thus, we will not discuss Mr. Zajac's breach of contract theory here.

517-18 (analyzing the trial court's dismissal of appellant's motion for leave to amend for futility and finding that appellant's asserted claim was not "plausible"); *Bare*, 336 A.3d at 629-30 (evaluating the merit of appellant's proposed amendments and finding that both were futile and thus dismissal by the trial court was proper). We now clarify and explicitly hold that we review denials of leave to amend for futility applying the de novo dismissal standard.[4]

Consistent with this standard, we take the "allegations of the [amended] complaint as true, and construe all facts and inferences in favor of the plaintiff." *Grayson v. AT&T Corp.*, 15 A.3d 219, 228 (D.C. 2011) (quoting *Solers, Inc. v. John Doe*, 977 A.2d 941, 947 (D.C. 2009)). To survive a futility argument, the amended complaint must contain sufficient factual matter, and the plaintiff must plead

---

[4] This de novo standard for futility denials now brings our court in line with every federal court of appeals. *See e.g.*, *Rife v. One West Bank, F.S.B.*, 873 F.3d 17, 20 (1st Cir. 2017); *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 147 F.4th 183, 190 (2d Cir. 2025); *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 113 (3d Cir. 2025); *Ricketts v. Wake Cnty. Pub. Sch. System*, 125 F.4th 507, 520 (4th Cir. 2025); *Clark v. Dep't of Pub. Safety & Corrs.*, 141 F.4th 653, 661 (5th Cir. 2025); *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024); *Reilly v. Will Cnty. Sheriff's Office*, 142 F.4th 924, 930 (7th Cir. 2025); *Trambly v. Bd. of Regents of Univ. of Nebraska*, 145 F.4th 922, 928 (8th Cir. 2025); *In re Cloudera, Inc.*, 121 F.4th 1180, 1190 (9th Cir. 2024); *Seale v. Peacock*, 32 F.4th 1011, 1027-28 (10th Cir. 2022); *United States ex rel. Smith v. Odom*, 148 F.4th 1322, 1328 (11th Cir. 2025); *Rudometkin v. United States*, 140 F.4th 480, 491 (D.C. Cir. 2025).

sufficient factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This is a low standard and does not require a likelihood that the plaintiff will ultimately prevail on the merits. *See Poola v. Howard Univ.*, 147 A.3d 267, 276 (D.C. 2016).

Reviewing de novo whether Mr. Zajac's amendments were futile, and thus leave to amend should not be granted, we conclude that the amended complaint plausibly alleged wage theft on the counts that Finnegan both failed to pay Mr. Zajac a productivity bonus and failed to fully reimburse him for tuition expenses.[5] We address each count in turn.

### 1. The Productivity Bonus

We turn first to the productivity bonus Mr. Zajac alleges he is owed. In viewing all facts and inferences in favor of Mr. Zajac, as we would at the dismissal

---

[5] We pause to explicitly note that we make this determination under the dismissal standard. Because we have not yet decided whether the discretionary nature of funds to be paid to an employee is decisive in the consideration of wages under the DCWPCL, we would benefit from a full record and the trial court's analysis of it to make such a determination.

stage, he has sufficiently pled factual content to support his allegation that Finnegan withheld funds owed to him as a "wage" under the DCWPCL.

The DCWPCL clearly states that a bonus is a "wage." D.C. Code § 32-1301(3)(A). Thus, the productivity bonus Mr. Zajac alleges he is owed would in fact qualify under the act. But the issue is not whether the bonus qualifies as a wage, instead the issue is whether Mr. Zajac has sufficiently pled that he was actually owed the bonus. Finnegan asserts that the productivity bonus was discretionary and thus they had the discretion to decline to pay Mr. Zajac the bonus. Mr. Zajac disputes the discretionary nature of the bonus. However, this case is not simply word against word on its face. Mr. Zajac referenced his 2018 Associate offer letter in his complaint and amended complaint, and Finnegan supplied the court with a purported copy of the document. We recently held in *Tovar v. Regan Zambri Long, PLLC*, that when a plaintiff incorporates a document by reference in their complaint and does not contest the authenticity of the document, the trial court is permitted to consider the document without converting the motion to dismiss to one for summary judgment. 321 A.3d 600, 609-10 (D.C. 2024). That complicates consideration of a complaint at dismissal, where we otherwise accept well-pled allegations as true. *See Bell v. Weinstock, Friedman & Friedman, P.A.*, 341 A.3d 1, 8-9 (D.C. 2025). There is now documentary evidence to contest such allegations.

While we have not directly held as much before, we agree with our sister court in New York that "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration." *Myers v. Schneiderman*, 85 N.E.3d 57, 61 (NY 2017) (internal quotation marks omitted) (quoting *Simkin v Blank*, 968 N.E.2d 459, 462 (NY 2012)). And that is how we have approached consideration of such evidence in the past as well. *See, e.g., Tovar*, 321 A.3d at 611 (concluding that the relevant settlement agreement "unequivocal[ly]" released a different party, not the defendant, from future legal action, thus making dismissal of plaintiff's claims on these grounds error); *Creative Consolidation, LLC v. Erie Ins. Exch.*, 311 A.3d 902, 909 (D.C. 2024) (ruling that appellant's claim for insurance coverage under a particular provision could not stand against the text of the insurance policy which made "clear that such coverage" was inapplicable, so dismissal on this point was justified); *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1024-25 (D.C. 2007) (analyzing sales contracts between both parties which show "dispositive facts" that the alleged regulatory violations could not be sustained, thus rendering dismissal proper). That is to say that factual allegations are not required to be accepted as true when contradicted by clear, appropriately considered documentary evidence at the dismissal stage.

Turning back to our case, we do not view the 2018 Associate offer letter as so decisive. First, unlike the authenticated settlement agreement in *Tovar*, Mr. Zajac does not validate, and insinuates a challenge to the authenticity of, the letter copy, alleging that his original copy of the letter was destroyed while he was "on severance." Next, even if we accept it as authentic, the offer letter that Finnegan presents does not foreclose the possibility that agents of the firm could have made oral promises to Mr. Zajac after his offer letter was given, as he pleads. Therefore, based on the record before us, we have no way to fully determine the merits of either side's argument because the documentary evidence does not flatly eliminate Mr. Zajac's factual allegations. While the letter provides some evidentiary value, we are essentially left at this stage with a final dispute of Mr. Zajac's word against that of Finnegan's. Our reading of the record reveals that there are various ways for Mr. Zajac to prove (and Finnegan to disprove) whether the bonus was discretionary.

In viewing all facts and inferences in favor of Mr. Zajac, we conclude that Mr. Zajac has sufficiently pled facts that Finnegan withheld a productivity bonus from him.

### 2. Law School Tuition Reimbursement

We turn next to whether the tuition reimbursement qualifies as a wage. The closest we have come to deciding this issue is our opinion in *Sivaraman v. Guizzetti*

*& Assocs., Ltd.*, 228 A.3d 1066 (D.C. 2020), which the trial court recognized and both parties raise in their briefs. There, interpreting the DCWPCL, we held that a moving stipend qualified as a wage because, akin to a signing bonus, it was a "lump sum simply for accepting the offer of employment and starting [the] job." *Sivaraman*, 228 A.3d at 1073. In so holding we determined that a lump sum stipend is similar to a bonus or fringe benefit because it is a "net monetary benefit[] conferred on an employee by reason of [] employment." *Id.* at 1074. However, we also held that an expense reimbursement does not qualify as a wage under the statute because "reimbursements for specific expenses confer no monetary benefit or enrichment on an employee []." *Id.* at 1075.

In interpreting the DCWPCL, we have said that the word "wages" "refers to one's salary and other employment-related earnings, rather than mere repayments for expenses incurred." *Id.* at 1075. We reiterate that when the D.C. Council amended the DCWPCL, replacing the restrictive language of "for labor or services," *see* 60 D.C. Reg. 12472, § 2062 (2013) (codified as amended at D.C. Code § 32-1301(3)), with broader categories of monetary benefits, it is clear that the D.C. Council intended a more expansive reading of what qualifies as a wage. *See Sivaraman*, 228 A.3d at 1074 (citing *Arangure v. Whitaker*, 911 F.3d 333, 341 (6th Cir. 2018)).

Today we clarify and hold that a lump sum or stipend does not qualify as a wage where it does nothing more than reimburse the employee for expenses incurred on behalf of the employer, or put simply, makes the employee whole. *See Sivaraman*, 228 A.3d at 1075 ("[R]eimbursements for specific expenses confer no monetary benefit or enrichment on an employee, but serve only to make [the employee] whole."). However, the tuition reimbursement here (if mandatory) is akin to the moving stipend in *Sivaraman* because it is a net benefit conferred to Mr. Zajac by reason of his employment. Mr. Zajac isn't being made whole by Finnegan's tuition reimbursement for an expense he took on as necessary to be employed with the firm, he is collecting a benefit for an expense he incurred independent of the firm.

We view the offer to reimburse tuition as an enticement made by the firm to encourage Mr. Zajac to accept its offer of employment. And this makes sense— various law firms have created fellowships and programs to attract the candidates that the firm desires. These programs offer additional benefit, often in scholarship form, beyond the traditional summer associateships that are the primary entry-level pathway to employment with such firms. Such enticement makes all the more sense for a leading law firm focused on intellectual property law, a field that often requires particular technical knowledge and can require additional examination, resulting in a smaller pool of candidates to recruit from.

As an enticement, the pled tuition reimbursement is no different from the moving stipend in *Sivaraman* that was offered as an enticement to accept the offer of employment. *See Sivaraman*, 228 A.3d at 1073. Regardless of whether Finnegan decided to pay for Mr. Zajac's education, he was still receiving the education at the time the offer was made. Further, unlike the expense reimbursements in *Sivaraman*, the tuition reimbursement offer to Mr. Zajac is not reimbursing him for business expenses he incurred on behalf of the business.

In sum, we conclude that the tuition reimbursement in this case is in fact a wage either as a bonus or fringe benefit because it is a net monetary benefit conferred on Mr. Zajac by reason of his employment. This is not a reimbursement with the sole purpose of making Mr. Zajac whole.

Although we have determined that the tuition reimbursement does in fact qualify as a wage under the DCWPCL, the analysis does not stop there. Whether it is discretionary or not remains a question. As noted above, whether the wages are discretionary is a determination we are unable to make without the benefit of a fuller record. For example, we are unable to discern: whether others were paid the tuition reimbursement while Mr. Zajac was not, whether it was at a pre-tax or post-tax rate, whether in fact the alleged oral promises were made, nor whether the required conditions for reimbursement were satisfied. Mr. Zajac's amended complaint

contains sufficient facts to raise the issue. Thus, this is an issue better resolved with development of a factual record by the trial court. We remand.

### III. Conclusion

For the foregoing reasons, the judgment of the Superior Court of the District of Columbia is reversed and remanded for further proceedings consistent with this opinion.

*So ordered.*